Pérez Villamil et al., Apelados, v. Romano et al., Apelantes.

## Apelación procedente de la Corte de Distrito de San Juan, Sección 1ª.

### No. 878.—Resuelto en junio 27, 1913.

Hijos Naturales — Reconocimiento por Documento Público — Admisiones Hechas por el Padre Natural en un Juicio Sobre Alimentos.—En el año 1873 la madre de los demandantes demandó en el Juzgado de Paz de Río Grande a Ramón Pérez Villamil, causante de los demandados, para que le entregara semanal o diariamente la cantidad necesaria para sostener a los tres hijos que ella había tenido con él, o sean los demandantes en este pleito. El citado Pérez Villamil, que en aquella época era juez de paz de dicho pueblo, y que se abstuvo de conocer de esta demanda por haber sido recusado por la demandante, en el acto del juicio entre otras cosas admitió que la demandante había vivido con él en su casa y que había tenido los tres hijos mencionados en la demanda, y que le había venido entregando mensualmente cierta cantidad, y terminó comprometiéndose a pasarle mensualmente diez pesos para sus hijos y a proporcionarles ropa y calzado, en virtud de todo lo cual el juez de paz falló declarando que tanto la demandante como el demandado estaban obligados a respetar y cumplir lo que habían convenido en dicho acto. Se resolvió:

1. Que las admisiones hechas por el citado Pérez Villamil en aquel acto constituyen un reconocimiento hecho por el demandado en un acto público y solemne de los citados tres hijos, o sean los demandantes en esta acción.

2. El reconocimiento hecho en aquel acto se desprende de la conducta y de las palabras pronunciadas por el demandado, sin que influya para nada en el alcance de ellas el hecho de que él hubiera o nó claramente concebido la idea de que estaba creando un *status* para sus hijos.

3. Que el acta del juicio celebrado ante el juzgado de paz constituye un documento público suficiente para los efectos del reconocimiento, sin que afecte para nada dicha suficiencia ni la solemnidad del acto el que el juzgado tuviera o nó jurisdicción para conocer de dicho asunto, o que el juez fuera *de facto*, si el documento en sí es auténtico y las partes realmente creen que están ante la autoridad.

Id.—Reconocimiento Claro y Público—Tendencia de los Tribunales—Interpretación.—Los tribunales se inclinan siempre a favor del hijo natural cuando el reconocimiento resulta claro y público, cualquiera que pueda ser la forma en que dicho reconocimiento se verifique, siempre que quede de él constancia auténtica y fehaciente, dando a dicho acto una interpretación natural y humana.

Id.—Documento de Reconocimiento Auténtico.—Examinada la prueba presentada en este caso se resolvió que el documento presentado para demostrar el reconocimiento a favor de los demandantes como hijos naturales del causante de los demandados era auténtico y por ser de más de 30 años está comprendido en las disposiciones del párrafo 33 del artículo 102 de la Ley de Evidencia de 1905.

Id.—Estado de los Padres—Presunción.—En una acción sobre nulidad de institución de herederos entablada por los hijos naturales reconocidos en virtud de un documento público, no es necesario alegar y probar que en la época del nacimiento de dichos hijos sus padres eran ambos solteros y podían contraer matrimonio. Una persona se presume soltera hasta que se pruebe lo contrario y en un caso de esta naturaleza al demandado incumbe probar que los padres de los hijos naturales que reclaman no podían contraer matrimonio cuando ellos nacieron.

Id.—Acción de Reconocimiento—Cosa Juzgada.—En este caso los demandantes ignorando la existencia del documento de reconocimiento en que fundan la presente acción de nulidad de institución de herederos, entablaron una acción de reconocimiento que fué resuelta en contra de ellos. Y esta sentencia ha sido alegada por los demandados en este pleito como cosa juzgada. Se resolvió que dicha sentencia no podía ser alegada como defensa de cosa juzgada en esta acción, por no reunir ambos pleitos los requisitos de identidad que exige la ley.

Los hechos están expresados en la opinión.

Abogados de los apelados: *Sres. José de Guzmán Benítez, Francisco de la Torre* y *José Martínez Dávila.*

Abogados de los apelantes: *Sres. Bosch* y *Soto.*

El Juez Asociado Sr. Wolf emitió la opinión del tribunal.

Son numerosas las cuestiones que incidentalmente han sido presentadas en esta apelación, pero según el análisis final que hemos hecho de las mismas, tal vez dos son solamente las cuestiones de importancia a saber: si Ramón Pérez Villamil reconoció a los demandantes como hijos naturales suyos y si este reconocimiento fué hecho en debida forma. Hace algunos años que los demandantes trataron de establecer sus derechos mediante una acción de filiación, pero se declaró que ésta había prescrito. Subsiguientemente los demandantes entablaron esta acción fundados en el hecho de que habían sido reconocidos por su padre en un documento público, habiéndose acompañado a dicha demanda una copia fiel del expresado documento. El caso gira en su totalidad sobre la cuestión referente a este documento y hemos creído conveniente y oportuno reproducirlo en la siguiente forma:

"Señor Juez de Paz de este pueblo. Telesfora Quiñones, natural y vecina de este pueblo, de estado soltera, y mayor de edad, ante V. demanda, en juicio verbal civil, a su convecino Don Ramón Pérez Villa-

mil, propietario y comerciante, para que le entregue semanal o diaria-
mente, la cantidad necesaria, para poder sostener a los tres hijos que
tuvo con ella, en los ocho años que vivió maritalmente en la propia
casa del demandado, llamados, Angel, Adelina y Plácida, nacidos, el
cinco de agosto del año de mil ochocientos sesenta y cinco, treinta de
noviembre del siguiente año, mil ochocientos sesenta y seis, y quince
de febrero de mil ochocientos sesenta y ocho, respectivamente, así como
el importe de un billete que le entregó premiado, y que cobró a su
debido tiempo, número tres mil ochenta y uno, perteneciente al sorteo
celebrado en la capital, el día veinte y tres de junio del año de mil
ochocientos sesenta y ocho, todo lo cual justificará a su debido tiempo.
Suplicando al señor juez se sirva señalar día y hora para la celebra-
ción del juicio, previa citación del demandado, condenándolo además
y en definitiva, al pago de todas las costas que se causaren en el pre-
sente juicio, por ser así procedente en justicia que pido en Río Grande
a cuatro de noviembre de mil ochocientos setenta y tres.    Otrosí.
Siendo la parte demandada el actual juez propietario, Sr. Don Ra-
món Pérez Villamil, lo recuso desde luego con arreglo a derecho y
suplico al juzgado, se sirva tener por hecha mi recusación, en la forma
más enérgica posible, pues así procede en justicia, que pido con la
anterior fecha. 2º. Otrosí.  Siendo el actual secretario, Don José Vivas
Monge, amigo íntimo del juez demandado, y enemigo personal acé-
rrimo de la demandante, como lo podrá justificar debidamente si lle-
gase el caso, lo recusa también; prohibiendo a este señor, que actúe
en las diligencias de cualquier índole que tengan que practicarse en
la presente demanda, y su correspondiente juicio y suplico al juzgado
que se sirva tener por hecha esta recusación, en la forma más solemne,
para que surta los efectos de justicia, que pido en el mismo lugar y
día que en lo principal y primer otrosí.    (Firmado) A ruego de
Telesfora Quiñones por no saber, Tomás Benoyt.

"Siendo insolvente la demandante, como le consta a todos los ve-
cinos de este pueblo, pues sólo cuenta para su subsistencia con dos
pesos mensuales que gana mensualmente como cocinera, acompaña dos
pliegos de papel de pobre, números 154, 267 al 154, 270, para el
caso de que el señor juez desee promover incidente de pobreza, o en
caso contrario para que sirvan para el acta del juicio, pues así pro-
cede en justicia que pido como antes.  A ruego de Telesfora Quiñones,
(firmado) Tomás Benoyt.

"Río Grande, cuatro de noviembre de mil ochocientos setenta y
tres.  Cítese por los actuarios nombrados por el proveyente, al deman-
dado Don Ramón Pérez Villamil, para que comparezca a este juzgado,

·el viernes, siete de los corrientes y hora de la una de su tarde en que tendrá lugar la celebración del juicio solicitado por su demandante, Telesfora Quiñones, pudiendo venir acompañado de las pruebas que .tenga por conveniente.     Enmendado.     Viernes, vale.     Lo mandó y firma el señor juez de paz, primer suplente Don Santos Jiménez, por ante nos que testificamos.    (Firmado) Santo Ximénez.     José Quiñones.     Adelino ·Kindgley.     Hay un sello del juzgado.

''En el mismo día los actuarios que suscriben, constituídos en la ·casa-vivienda de Don Ramón Pérez Villamil, le citamos en forma legal para su comparendo en el día y hora señalada por el señor juez, y le fué entregada la boleta de demanda correspondiente, y firma en prueba de quedar enterado ante nos que testificamos.    (Firmado) R. Villamil.     José Quiñones.     Adelino Kindgley.

''En el pueblo de Río Grande a los siete días del mes de noviembre de mil ochocientos setenta y tres, el señor juez de paz suplente, Don Santos Jiménez, estando en audiencia pública, asistido de los actuarios Don José Quiñones y Don Adelino Kindgley por haberse inhibido de conocer en el presente juicio por ser parte interesada el señor juez propietario, y recusado por la demandante al secretario Don José Vivas Monge, siendo el día y hora señalados para la celebración del presente juicio, y hallándose presentes las partes.se procedió a dar comienzo al acto, y habiendo manifestado la demandante que había autorizado a Don Tomás Benoyt para que como su asociado, hablase a nombre de ella, que reproducía la demanda establecida en todas sus partes, sin quitar una sola palabra, y que por el contrario añadía, que además, el demandado tiene en su poder, cinco vacas ·de la demandante y una yegua parida, y desea que se las entregue con sus ganancias, pues dos de las vacas estaban paridas cuando se las entregó hace cinco años, sin que por ahora tenga que significar otra cosa.    El ,demandado contestó.    Que nunca ha negado que la demandante ha vivido en su casa, ni tampoco le ha negado los tres hijos que la misma hà nombrado y para el sostenimiento de los mismos le viene entregando todos los meses cinco pesos, desde que se concluyeron las relaciones amorosas que tenían.    Que en cuanto al ganado y dinero del billete premiado, cuyo númer˅ no recuerda en los momentos, ya le entregó hará unos dos años, un documento en que constan estos parti· culares, y no cree prudente entregarle a su demandante nada de lo que solicita, porque ese capitalito ·debe retenerlo en su poder para administrarlo, a fin de adelantarlo para sus hijos, toda vez que fué adquirido por la demandante por la época en que vivía ´con el que habla, y porque entiende, además, que la demandante, que es una

mujer de poco talento, lo malgastaría todo en poco tiempo, y eso no puede autorizarlo el deponente, porque sería echar agua en un cedazo. La demandante replicó: que es incierto lo que acaba de significar el Sr. Villamil, pues si bien es verdad que todos los meses le viene entregando cinco pesos en efectos de su pulpería, esto es, según le tiene manifestado, como intereses del importe del billete premiado que le entregó, y no por otro concepto, lo cual no le alcanza para nada, pues a medida que los niños crecen, el gasto aumenta, y la demandante apenas puede sostenerlos con esa suma y dos pesos mensuales que gana alquilada de cocinera, y como a pesar de haberle hablado varias veces al demandado para que le aumente la pensión, éste nada ha hecho en su favor, se ha visto en la necesidad aún contra su voluntad, de establecer la presente demanda, para ver de conseguir lo que con tanta necesidad y perfecto derecho reclama, sin que por ello le guarde mala voluntad al Sr. Villamil. El demandado duplicó: que en atención a las observaciones hechas por el señor juez y con el fin de que este asunto no tome el giro que ciertos caballeros de la localidad desean darle, se compromete a pasar mensualmente a su demandante si ella es conforme, diez pesos mensuales para sus hijos, y una muda de ropa cada tres meses con su calzado correspondiente, lo cual considera suficiente, siempre que la demandante ayude también con lo que le sea posible. La demandante replicó: Que es conforme con lo propuesto por su demandado Don Ramón Pérez Villamil, siempre que el citado señor no le falte a lo ofrecido en ningún tiempo.

"En este estado, el señor juez dió por terminado el acto, manifestando, que toda vez que las partes habían podido llegar a un acuerdo, de lo cual se alegraba, debía de fallar y fallaba, condenando a la demandante, Telesfora Quiñones, y al demandado Don Ramón Pérez Villamil, a estar y pasar por lo convenido entre ambos en este juicio por ser cosa juzgada ante juez competente, imponiendo las costas de este juicio al demandado Don Ramón Pérez Villamil. Y habiendo manifestado ambos estar conformes firman en prueba de ello, a excepción de la demandante que dijo no saber, y lo hará a su ruego su asociado Sr. Benoyt, después del señor juez, por ante nos que testificamos. (Firmado) Santo Ximénez. Tomás Benoyt. José Quiñones. R. Villamil. Adelino Kindgley. Hay el sello del juzgado.

CERTIFICO: Que la precedente es una copia exacta del original de su contenido a que me remito y a petición del Ledo. Don José Martínez Dávila, libro la presente en Carolina, a quince de junio de mil novecientos once. Rosendo Arce. Secretario de la Corte Municipal de Carolina, P. R.''

Los apelantes niegan la autenticidad de este documento, pero pospondremos la discusión de este punto a la consideración de las otras cuestiones que han sido presentadas.

Alegan los apelantes que éste no es el documento público necesario para el reconocimiento de un hijo natural, cuya alegación la fundan en parte en el hecho de que en dicho documento el padre no revela expresamente su intención de reconocimiento, ni el pleito se entabló con tal fin. Alegan; además, que este expediente del Juzgado de Paz de Carolina, no es uno de los documentos públicos admitidos como tales por la ley, pues no es ni la sentencia de una corte competente ni tampoco un documento notarial. Sostienen también que el juzgado de paz no tenía jurisdicción sobre la determinada cuestión en controversia, ni era posible que tuviera tampoco jurisdicción sobre pleitos de filiación, reconocimiento y otros semejantes. Sin tratar de refutar inmediatamente las objeciones específicas que se formularon a la sentencia de la corte inferior, haremos primeramente una reseña de algunos de los hechos relativos al aspecto de la questión legal según el parecer que tenemos de los mismos.

Los apelantes admiten que suponiendo que el documento sea auténtico, los demandantes hubieran tenido derecho por medio de una acción de filiación para obligar a su padre a que los reconociera, si hubieren entablado dicha acción oportunamente. Pero esta transcripción de los autos del juzgado de paz revela algunos otros hechos en cuanto a este particular. Los hijos de Villamil, por mediación de su madre, en la fecha en que tuvieron lugar los procedimientos en el juzgado de Paz de Carolina, pudieron haber ejercitado tal acción. Ramón Pérez Villamil admite en dichos procedimientos que la madre había vivido en su casa, que él había contribuído a su sostenimiento y al de los hijos y afirma que nunca negó las relaciones que tuvo con la madre ni que fuera el padre de los hijos mencionados por Telesfora Quiñones en la solicitud presentada por ésta al juzgado de paz. Afirma, además, que debía permitírsele retener el importe del billéte

de lotería, porque éste había sido adquirido durante el tiempo
en que Telesfora Quiñones vivía con él, y debía dejársele em-
plear tales productos para beneficio de los hijos, y además
porque el temía que Telesfora Quiñones los malgastara. No
solamente afirma él estos hechos sino que con el fin de que
el asunto no tomara el giro que ciertos caballeros de la loca-
lidad desearían darle, él estaba conforme en pagar a la enton-
ces demandante, la suma de diez pesos mensuales y hacer
otras cosas en favor de ella y de sus hijos. De modo que re-
sultó claro que hubiera procedido un pleito sobre reconoci-
miento aun antes de presentar la demanda en el juzgado
de paz. Es evidente que en la fecha del expediente era un
hecho notorio la paternidad de Pérez Villamil con respecto
a los demandantes y al reconocimiento de los mismos. En
verdad que la actitud de éste era la de un padre indiferente.

El propio Ramón Pérez Villamil era el juez de paz, en cuya
corte Telesfora Quiñones entabló su acción y ella lo recusó.
El debió haber estado mejor informado que ninguna otra per-
sona de la jurisdicción de esa corte. No promovió obje-
ción de ninguna clase y su manera de contestar y asentimiento
en la sentencia tienden inevitablemente a dejar resuelto, por
lo menos en la mente de una persona analfabeta y que no
esté versada en las sutilezas de la ley civil, la cuestión de si
los demandantes habían sido debidamente reconocidos y si
se les había fijado su *status* como tales hijos naturales reco-
nocidos. Telesfora Quiñones era tal persona. Aquí había
un hombre, el juez y el padre que en momento solemne reco-
noció a sus hijos y que convino en cumplir lo solicitado por ella
para poner término al litigio. A no ser por esta conducta
o proceder de Pérez Villamil, Telesfora Quiñones pudiera
haber entablado una acción de filiación a favor de sus hijos
en la corte correspondiente. No existe ninguna duda a nues-
tro juicio de que éste fué un acto público y solemne de reco-
nocimiento llevado a cabo por Ramón Pérez Villamil.

¿Revelaron estos procedimientos la intención de Pérez
Villamil de reconocer a los hijos, y es suficiente la prueba.

que de ellos se presentó? Con respecto a la cuestión refe-
rente a la intención creemos que el documento habla por sí
mismo. No solamente Pérez Villamil reconoce a los hijos,
sino que se compromete a atenderlos, así como también a la
madre. Y no establece diferencia alguna el hecho de que
él hubiera claramente concebido la idea de que estaba
creando un *status* para sus hijos. El expresaba en un sitio
público, en una corte: "Estos son mis hijos. Hasta ahora
he atendido a su manutención y continuaré haciéndolo así."
Su intención de reconocerlos surge de sus palabras y proce-
der en el pleito en cuestión. El asumió prácticamente todas
la obligaciónes que le imponía la institución de la *patria
potestad* y su intención de verificar el reconocimiento resulta
clara, teniendo en cuenta su proceder.

Creemos, además, que estos procedimientos habidos en el
juzgado de paz, constituyeron un documento público suficiente.
A petición del juez de paz ambas partes expresaron su asenti-
miento firmando el acta. Ningún documento notarial podría
ser más solemne. Ya tuviera o nó jurisdicción la corte, las
partes creyeron que la tenía. El documento o acta no es
menos solemne por el hecho de que la corte carezca de juris-
dicción o que el funcionario sea uno *de facto,* si el documento
resulta ser auténtico y las partes realmente creen que se
encuentran ante la debida autoridad. El caso de *Blythe* v.
*Ayres,* 96 Cal., 584, fué uno sobre reconocimiento de un hijo
natural. Los hechos de este caso particular no son aplicables
al presente, pero en aquél el Juez Garoutte examina un nú-
mero de autoridades, siendo algunas de las mismas aplica-
bles al que ahora consideramos. En el caso de *Rice* v. *Efford,*
3 Hen. & M., 227, se resolvió que el reconocimiento de un
hijo ilegítimo como hijo del testador hecho en un testamento,
era suficiente para darle derecho en la herencia, no obstante
ser dicho testamento nulo como tal. En el caso de Sucesión
de Fletcher, 11 La. Ann., 60, Henry Fletcher, en un docu-
mento sobre emancipación otorgado ante un notario y tes-
tigos, se describe a la parte emancipada por el documento

como "hija natural, esclava," habiéndose resuelto que éste era un reconocimiento suficiente de paternidad, con arreglo a . un estatuto que declaraba que "el reconocimiento de un hijo ilegítimo se hará por medio de una declaración otorgada ante un notario público, y en presencia de dos testigos." En este caso la corte citando autoridades francesas, resolvió "Se ha dicho que las palabras 'hija natural, esclava' eran términos de descripción distintos a aquellos del documento empleado para emancipar a una esclava y no para legitimar (*reconocer*) su paternidad, pero no se prescribe ninguna forma para tal reconocimiento, exceptuando solamente que la declaración debe hacerse ante un notario público, en presencia de dos testigos." En el caso de *Remy* v. *Municipality*, 11 La. Ann., 159, la corte, al referirse al reconocimiento de paternidad hecho en un .testamento dijo "Este documento, es cierto, tuvo por objeto ser un testamento, y nunca ha sido admitido como tal en las cortes de testamentaría, pero aunque no es obligatorio como testamento, es indudablemente válido como un reconocimiento de paternidad hecho en debida forma.

No olvidamos, desde luego, que las disposiciones de nuestro Código Civil y aquellas de los estatutos de los diferentes estados no son idénticas, pero citamos los anteriores casos para mostrar que las cortes se inclinan siempre a favor del hijo natural cuando el reconocimiento resulta claro y públicamente, cualquiera que pueda ser la forma en que dicho reconocimiento se verifique, siempre que quede de él constancia auténtica y fehaciente. Los apelantes no nos han citado ningún caso de la Corte Suprema de España que sea semejante en absoluto en cuanto a los hechos, y en ausencia de tal citación debe prevalecer la interpretación natural y humana.

Bajo este punto de vista resulta de poca importancia el considerar si el juzgado de paz tenía en realidad jurisdicción. Tal vez la suma o cosas reclamadas por Telesfora Quiñones excedía en su totalidad de la jurisdicción de dicha corte, pero

este hecho no aparece claramente de los autos y surgiría
también una duda con respecto a si este·pleito era más bien
por su naturaleza un acto de conciliación que un pleito con-
tencioso, y este parecer encuentra apoyo en el hecho de que
Ramón Pérez Villamil firmó el acta y Telesfora Quiñones
hizo que alguien firmara por ella, expresando la misma corte
que estaba satisfecha con el convenio a que habían llegado las
partes.

Se ha negado la autenticidad del. documento y los apelan-
tes presentaron en el juicio ante la corte inferior documen-
tos y peritos, para probar que entre otras, las firmas de
Villamil y Jiménez (o Ximénez), el juez sustituto, eran falsas.
Estos documentos han sido certificados y remitidos a este
tribunal y hemos cotejado algunos de ellos. Con respecto a
la firma de Villamil creemos que no puede haber duda alguna,
y la misma le imprime el carácter de verdadero al acto y a
las otras firmas y demás manifestaciones contenidas en los
procedimientos. En los procedimientos, Ximénez aparece ac-
tuando como juez sustituto. Es verdad que en documentos
anteriores Jiménez resulta firmando con una "J" en vez
de una "X," pero Santos Jiménez tenía derecho a cambiar
la forma de su firma y a usar "X" en vez de "J." Su firma
muestra que escribía con dificultad y quizás en ciertas oca-
siones prefirió firmar su nombre con· una "X" en vez de
"J." De todos modos existe un conflicto en la prueba que
fué presentada ante la corte inferior, y no vemos motivo al-
guno para modificar las conclusiones de dicha corte en cuanto
a este particular. Además, convenimos con la corte senten-
ciadora, en que como el origen de este documento procedente
del Juzgado de Paz de Carolina, había quedado probado satis-
factoriamente, la prueba que había de presentarse para im-
pugnar su autenticidad tendría que ser muy clara. A la vez,
este documento es de más de 30 años y parece estar com-
prendido en las disposiciones del artículo 102 de la Ley de
Evidencia, párrafo 33.

Los apelantes también alegan que los demandantes deja-

ron de probar durante el juicio, que en la época de su naci-
miento sus padres eran ambos solteros y podían contraer
matrimonio.    Hemos resuelto en varios casos que debe pre-
sumirse que una persona es soltera hasta tanto se demuestre
lo contrario, pero debe recordarse que ésta no es una acción
sobre filiación en la cual es necesario el requisito referente
al estado de soltería, sino un pleito sobre nulidad de un tes-
tamento y para que se declaren herederos a los demandantes.
Ellos se fundan en su estado legal reconocido anteriormente
y la obligación de probar que sus padres no tenían derecho a
casarse incumbe a la otra parte.

Los apelantes también sostienen que su alegación referente
a cosa juzgada, *res judicata*, debiera haber prevalecido.    En
la fecha en que los apelantes entablaron su primitiva acción
la existencia de este documento era desconocida para ellos.
De todas maneras, según ya hemos indicado, la acción pri-
mera era sobre filiación, para adquirir el estado legal que en
este pleito ahora, ellos alegan que tenían desde el año 1873.

Semejantes consideraciones pueden ser de aplicación a la
cuestión relativa a la prescripción que ha sido presentada
por los apelantes.    Los demandantes no trataban de que se
les reconociera como hijos de Ramón Pérez Villamil, sino
que alegaban que este estado o condición legal ya había sido
establecido por él.    Bajo los hechos alegados la alegación re-
ferente a la prescripción era ineficaz para los demandados.
Véase el caso de *Orama et al.* v. *Oyanguren,* (pág. 828).

La sentencia deber ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Asociados MacLeary, del Toro
y Aldrey.

Juez disidente: Sr. Presidente Hernández.

En julio 5, 1913, se interpuso recurso de apelación para
ante la Corte Suprema de los Estados Unidos, y en noviembre
21, 1913, la corte declaró sin lugar, por falta de jurisdicción,

una moción de la parte apelante de acuerdo con la apelada
para que se le tenga por desistida de la apelación interpuesta.

### OPINIÓN DISIDENTE EMITIDA POR EL JUEZ PRESIDENTE SR. HERNÁNDEZ.

En la demanda que originó el presente pleito se ejercita la
acción de nulidad de la institución de herederos hecha por
el difunto Ramón Pérez Villamil a favor de los demanda-
dos, por el fundamento de haber sido preteridos por el tes-
tador Pérez Villamil en su testamento los demandantes que
alegan ser hijos naturales reconocidos del mismo.

La cuestión previa que surge desde luego a discutir, es si ha
podido ejercitarse por los demandantes la acción de nulidad
de institución de herederos sin haberse antes ejercitado, o
al menos al mismo tiempo, la acción de reconocimiento.

Al resolver en 17 de junio de 1910 el caso de *Amsterdam
et al.* v. *Puente et al.,* 16 D. P. R., 554, 561, dejamos establecida
la siguiente doctrina:

"Creemos que de las disposiciones del Código Civil vigentes ante-
riormente, así como de la práctica y jurisprudencia sobre el particular,
puede correctamente deducirse la conclusión de que sin algún acto
que en forma auténtica revele la voluntad del padre, de dar a su hijo
tal estado, el hijo tiene solamente un derecho de acción para obligar
al padre a que le confiera dicho estado. El artículo 135 del Código
Civil Español, y el 189 del Código Civil de Puerto Rico, preveen los
casos en que un padre puede ser obligado a reconocer a su hijo ilegí-
timo. Solamente puede ser obligado a ello por medio de una acción,
y puede decirse que tal acción sería innecesaria, únicamente en aque-
llos casos en que hubieran actos solemnes por parte del padre, que
vengan a demostrar que tal obligación ha sido cumplida. Claramente
se deduce de estos artículos, que aunque un padre haya ejecutado,
como sucede en el caso de autos, una serie de actos tendentes a mos-
trar que determinada persona era hijo suyo, sin embargo, no puede
decirse que él la haya reconocido, dentro de la acepción que legal-
mente tiene la palabra 'reconocimiento.' Si él puede ser obligado a
ello, entonces hay que convenir en que antes de obligársele, el *deside-
ratum* no se ha logrado. Bajo tales circunstancias, y hasta que no

haya algún acto solemne, o alguna declaración de parte de un tribunal, no puede decirse que el hijo ha sido reconocido, ni puede afirmarse que haya adquirido el estado civil de hijo natural reconocido.   En el caso de autos, no hay prueba satisfactoria que demuestre la intención, por parte del padre, de reconocer a sus hijos naturales con todas las consecuencias legales propias de tal reconocimiento.''

En otro caso de *Puente et al.* v. *Puente et al.,* 16 D. P. R., 585, 586, dijimos:

''Para que la apelante en este caso hubiera podido alegar con éxito su condición de hija natural reconocida y oponerse como tal y como tal ser declarada heredera, era necesario que constara que su reconocimiento se había verificado voluntaria y solemnemente por el padre, sin lugar a dudas, o que teniendo ella derecho a ser reconocida de acuerdo con la ley y habiéndose omitido por el padre hacer el reconocimiento de una manera solemne o habiéndose negado a ello, había obtenido sentencia firme a su favor en un tribunal competente y dentro del procedimiento contencioso adecuado.

''\*   \*   \* Ha sido la práctica constante que cuando el padre omite o niega el reconocimiento, el hijo debe acudir al tribunal competente ejercitando la acción de filiación para obtener que el tribunal declare en una sentencia lo que omitió o se negó a declarar el padre de una manera solemne.   \*   \*   \*.''

En otro caso de *Rijos* v. *Folgueras et al.,* 16 D. P. R., 628, 629, nos expresamos en los términos siguientes:

''El hijo legítimo deriva su condición de tal del *matrimonio* de sus padres.   Para que el matrimonio se entienda realizado no basta la intención del hombre y la mujer de contraerlo, no basta que vivan juntos y que juntos hayan procreado hijos; sino que es necesario que el acto se realice en una de las formas solemnes que autoriza la ley y que quede de él la debida constancia auténtica y fehaciente.

''El hijo natural deriva su derecho del *reconocimiento* y para que el reconocimiento se entienda realizado y surta todos sus efectos legales, es necesario que se haga de una manera solemne por el padre con la firme voluntad de realizarlo, y que quede de él la debida constancia auténtica y fehaciente.   Cuando el padre realizaba actos tendentes a establecer su paternidad que por sí solos no constituían un reconocimiento solemne y de los que no quedaba constancia auténtica

y fehaciente, bajo las leyes de Toro; cuando ocurrían los casos del artículo 137, bajo el Código Civil antiguo, y cuando se realizan los del artículo 189 del vigente Código Civil revisado, entonces .debía y debe ejercitarse la acción de filiación y el reconocimiento debía y debe constar por la ejecutoria solemne de un tribunal competente.

''Los padres que en el cumplimiento de su deber deseen trasmitir a sus hijos naturales su apellido y sus bienes, o la parte que en ellos les corresponda, deben hacer constar el reconocimiento de una manera auténtica y fehaciente, por ejemplo, en el acta de nacimiento, en un documento público, en su testamento, en una declaración prestada en forma solemne ante un funcionario o tribunal, etc., de manera que el hijo natural reconocido pueda hacer constar su condición de tal, en la misma forma que el hijo legítimo.

''Cuando los padres no realizan el reconocimiento de los hijos naturales de la manera expresada, entonces los hijos deben ejercitar la acción de filiación y obtener una declaración judicial de su derecho.

''Si los padres y los hijos fueren negligentes, en tal caso ellos deben sufrir las consecuencias de sus actos y culparse ellos mismos y nó a la ley que reguló estas cuestiones de tanta trascendencia social de una manera uniforme y para bien de todos.''

''La calidad de hijo natural ha de fundarse necesariamente en el reconocimiento del padre, espontáneo y legalmente probado, o en el caso de omisión o resistencia, en una ejecutoria solemne que así lo declare.'' Sentencia del Tribunal Supremo de España de 16 de abril de 1864.

''La filiación de los hijos naturales debe constar necesariamente por el reconocimiento de sus padres o por la declaración solemne de una ejecutoria.'' Sentencia del Tribunal Supremo de España de 28 de junio de 1864.

Igual doctrina ha sido ratificada en los casos de *Calaf et al.,* v. *Calaf,* 17 D. P. R., 198, de *Peñagaricano* v. *Peñagaricano et al.,* (pág. 494), y de *Figueroa* v. *Díaz et al.,* (pág. 717).

Como se ve, no hay discrepancia alguna sino completa conformidad entre la doctrina sancionada por las sentencias de la Corte Suprema de Puerto Rico y las que interpretando el mismo punto jurídico dictó el Tribunal Supremo de España, en fechas en que no regía el Código Civil Español.

De dicha doctrina se desprende, que para ejercitar dere-

chos en los bienes de una persona fallecida, el supuesto hijo natural ha de contar siempre con un reconocimiento de su filiación, expreso, voluntario y solemne, que conste en forma auténtica y fehaciente, o con una sentencia ejecutoria en que sea declarada tal filiación. Si no existiere el reconocimiento en los términos antedichos o una sentencia ejecutoria que obligue al reconocimiento, el hijo natural deberá interponer una demanda de filiación antes o al mismo tiempo que interpone la de reclamación de derechos hereditarios.

Veamos ahora si los demandantes se encuentran en alguno de los casos expresados para que pueda eximírseles del ejercicio de la acción de reconocimiento.

Han presentado los demandantes para justificar el reconocimiento de su filiación por Ramón Pérez Villamil, el récord de un juicio verbal civil promovido ante el Juzgado de Paz de Río Grande en noviembre del año 1873, por Telesfora Quiñones contra Ramón Pérez Villamil, reclamando a éste cantidades para sostener a los tres hijos Angel, Adelina y Plácida, que la demandante afirmaba haber tenido con el demandado, y el importe de un billete premiado de la lotería provincial, cuya reclamación en el acto de la celebración del juicio se hizo extensiva a cinco vacas y una yegua.

Al contestar Pérez Villamil la demanda expresó:

"Que nunca ha negado que la demandante ha vivido en su casa, ni tampoco le ha negado los tres hijos que la misma ha nombrado y para el sostenimiento de los mismos, le viene entregando todos los meses cinco pesos desde que se concluyeron las relaciones amorosas que tenían. Que en cuanto al ganado y dinero del billete premiado, cuyo número no recuerda en los momentos, ya le entregó hará unos dos años, un documento en que constan estos particulares, y no cree prudente entregarle a su demandante nada de lo que solicita, porque ese capitalito debe retenerlo en su poder para administrarlo, a fin de adelantarlo para sus hijos toda vez que fué adquirido por la demandante, por la época en que vivía con el que habla, y porque entiende además, que la demandante que es una mujer de poco talento, lo malgastaría todo en poco tiempo, y eso no puede autorizarlo el deponente, porque sería echar agua en un cedazo. La demandante replicó: Que

es incierto lo que acaba de significar el Sr. Villamil, pues si bien es verdad que todos los meses le viene entregando cinco pesos en efectos de su pulpería, esto es, según le tiene manifestado, como intereses del importe del billete premiado que le entregó, y no por otro concepto, lo cual no le alcanza para nada, pues a medida que los niños crecen, el gasto aumenta, y la demandante a penas puede sostenerlos con esa suma, y dos pesos mensuales que gana alquilada de cocinera, y como a pesar de haberle hablado varias veces al demandado para que le aumente la pensión, éste nada ha hecho en su favor, se ha visto en la necesidad aun contra su voluntad, de establecer la presente demanda, para ver de conseguir lo que con tanta necesidad y perfecto derecho reclama, sin que por ello le guarde mala voluntad al Sr. Villamil. El demandado duplicó: Que en atención a las observaciones hechas por el Sr. Juez y con el fin de que este asunto no tome el giro que ciertos caballeros de la localidad desean darle, se compromete a pasar mensualmente a su demandante si ella es conforme, diez pesos mensuales para sus hijos, y una muda de ropa cada tres meses con su calzado correspondiente, lo cual considera suficiente, siempre que la demandante ayude también en lo que le sea posible. La demandante replicó: Que es conforme con lo propuesto por su demandado Don Ramón Pérez Villamil, siempre que el citado señor no le falte a lo ofrecido en ningún tiempo.''

Después de las anteriores alegaciones el juez de paz manifestó:

.''Que toda vez que las partes habían podido llegar a un acuerdo, de lo cual se alegraba, debía de fallar y fallaba condenando a la demandante Telesfora Quiñones y al demandado Don Ramón Pérez Villamil a estar y pasar por lo convenido entre ambos en este juicio, por ser cosa juzgada ante juez competente, imponiendo las costas de este juicio al demandado Don Ramón Pérez Villamil.''

El acta del juicio, comprensiva de las alegaciones de las partes y de la sentencia pronunciada, aparece firmada por el juez, por las partes, haciéndolo a ruego de la demandante, su acompañante Tomás Benoyt, y por los actuarios que asistieron al acto en sustitución del secretario recusado.

No tenemos dificultad en admitir que el documento de que se trata es público, pues documentos públicos son las actuaciones judiciales, y tampoco discutiremos su autenticidad,

admitida tanto por la corte inferior como por esta Corte Suprema. Pero no podremos estar conformes con que ese documento contenga el reconocimiento expreso, voluntario y solemne de los demandantes por parte de Ramón Pérez Villamil. Que no contiene sentencia ordenando dicho reconocimiento, es claro, pues la sentencia del Juez de Paz de Río Grande se limita a aprobar el convenio o acuerdo en virtud del cual el demandado se compromete a pasar a la demandante $10 mensuales y una muda de ropa con su calzado correspondiente cada tres meses, ordenando el cumplimiento de ese convenio, sin hacer declaratoria alguna sobre el reconocimiento por Pérez Villamil de los hijos de Telesfora Quiñones, la que tampoco en su demanda formuló petición alguna sobre ese extremo.

Hemos examinado detenidamente el documento de que se trata y no encontramos justificado en forma auténtica y fehaciente que Pérez Villamil reconociera expresa, voluntaria y solemnemente, a Angel, Adelina y Plácida, como hijos naturales suyos. Lo que si aparece demostrado en forma auténtica y fehaciente es que Pérez Villamil manifestó en el acto del juicio que nunca ha negado que la demandante ha vivido en su casa ni tampoco le ha negado los tres hijos, para cuyo sostenimiento le había venido entregando todos los meses $5, desde que se concluyeron las relaciones amorosas que ambos sostenían, expresando, además, no creer prudente entregar a Telesfora el importe del billete premiado, y las cabezas de ganado que le reclamaba, para que sus hijos conservaran ese capitalito y no lo malgastara una mujer de poco talento como la demandante. Esas manifestaciones hechas ante una autoridad judicial y consignadas en documento público constituirían un principio de prueba escrita del reconocimiento de los demandantes y a lo sumo la posesión de estado civil de hijos naturales por Angel, Adelina y Plácida con relación a Ramón Pérez Villamil, principio de prueba y posesión de estado que nunca los excusaría de ejercitar la acción de reconocimiento, según la doctrina que dejamos esta-

blecida al resolver el caso de *Gual et al.* v. *Bonafoux et al.,* 15 D. P. R., 559.

El reconocimiento de los demandantes por Pérez Villamil que se pretendiera deducir de las manifestaciones que hizo éste en el acto del juicio verbal civil, sería a lo sumo un reconocimiento tácito de la filiación natural de aquéllos, pero nunca el reconocimiento expreso, voluntario y solemne que la jurisprudencia establecida por esta Corte Suprema exige para que pueda ser innecesario el ejercicio de la acción de reconocimiento. Para que gramatical y legalmente pueda afirmarse que Pérez Villamil reconoció a los demandantes en documento público auténtico y fehaciente, es preciso que tal reconocimiento haya sido expreso, voluntario y solemne.

Además, el reconocimiento sería sólo incidental, pues Telesfora Quiñones no demandó a Pérez Villamil para que reconociera a los hijos que había tenido con el mismo, sino para que les pasara alimentos y ese reconocimiento meramente incidental no merece la calificación de solemne. Ni fué tampoco voluntario en el sentido de que Pérez Villamil quisiera reconocer en el acto del juicio a sus hijos pues si tal hubiera sido su propósito, hubiera hecho el reconocimiento en documento apropiado al efecto, con el fin de que en cualquier tiempo sirviera a sus hijos de comprobante de su filiación.

Aun más, el hecho de que Pérez Villamil conviniera en pasar alimentos a los tres hijos de Telesfora Quiñones con la cual había sostenido relaciones ilícitas, convenio aprobado por el Juez de Paz de Río Grande, no envuelve el reconocimiento de la filiación natural de aquéllos, aún admitiendo que a tal convenio sirviera de fundamento la paternidad natural de Ramón Pérez Villamil, pues en dicho juicio nada se establece ni podía establecerse sobre el reconocimiento. Sentencia del Tribunal Supremo de España de 11 de abril de 1861. Además, es sabido que nadie queda obligado a más de aquello a que quiso obligarse o a que judicialmente se le obliga.

El *status* civil de los demandantes con relación a Don Ra-

món Pérez Villamil no fué definido en el juicio verbal celebrado ante el Juez de Paz de Río Grande, pues en ese juicio no recayó decisión alguna sobre el particular y Pérez Villamil sólo se avino a pagar unos alimentos, avenencia que el demandado realizaba en atención a las observaciones hechas por el Sr. Juez y con el fin de que el asunto no tomase el giro que ciertos caballeros de la localidad deseaban darle, palabras reveladoras de falta de voluntad y propósito de hacer un reconocimiento tan importante como el de paternidad.

Faltando como falta la prueba en forma auténtica y fehaciente del reconocimiento expreso, voluntario y solemne de los demandantes por Pérez Villamil, ha debido ejercitarse previa o conjuntamente con la acción de nulidad de institución de herederos la de reconocimiento. En un juicio de esa clase podrían discutirse las acciones de prescripción y de cosa juzgada alegadas por la parte apelante.

Por las razones expuestas disentimos de la opinion sustentada por la mayoría de esta corte y opinamos que procede la revocación de la sentencia apelada, y que se declare sin lugar la demanda que originó el juicio, sin especial condenación de costas.