DELANNOY, DEMANDANTE Y APELADO, *v.* BLONDET, DEMANDADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., contra resolución denegando un nuevo juicio en causa sobre filiación.

No. 1057.—Resuelto en marzo 31, 1915.

NUEVO JUICIO—DESCUBRIMIENTO DE NUEVAS PRUEBAS—DISCRECIÓN JUDICIAL.—La concesión de nuevos juicios con motivo del descubrimiento de nuevas pruebas ha sido siempre una cuestión que depende de la sana discreción del tribunal sentenciador y su resolución generalmente no será modificada a no ser que se demuestre que ha habido abuso de dicha discreción.

ID.—REQUISITOS PARA UN NUEVO JUICIO.—Para que una parte tenga derecho a un nuevo juicio por el fundamento de haber descubierto nuevas pruebas, debe aparecer: (1) que la prueba y no meramente su materialidad, se ha descubierto nuevamente; (2) que la prueba no es meramente cumulativa; (3) que sea de tal clase que produzca un resultado distinto en el nuevo juicio del caso; (4) que la parte no pudo, no obstante la razonable diligencia ejercitada, descubrirla y producirla en el juicio, y (5) que estos hechos se muestren por medio de la mejor prueba que pueda presentarse.

PRUEBA CONTRADICTORIA — SU APRECIACIÓN — NUEVO JUICIO — DISCRECIÓN JUDICIAL.—Cuando hay conflicto de evidencia, a la corte inferior incumbe dirimirlo: y si los testigos incurrieren en contradicciones, también a la misma corte incumbe apreciar el valor probatorio de sus declaraciones, sin que a la corte de apelación le sea permitido ir contra la apreciación hecha por la corte inferior al resolver una pretensión de nuevo juicio.

DEMANDA—ALEGACIONES JURADAS NO IMPUGNADAS—CONTESTACIÓN A LA DEMANDA.—Cuando una alegación jurada en la demanda no se niega específicamente ni es impugnada en la contestación, debe tenerse por cierta para los efectos de la acción.

HIJOS NATURALES—IMPEDIMENTO DE LOS PADRES PARA CONTRAER MATRIMONIO—FALTA DE PRUEBA.—Aunque no hubiera habido prueba alguna acerca de la capacidad de los padres para contraer matrimonio en la fecha de la concepción y del nacimiento del hijo, cuando existe alegación jurada en la demanda de que no había impedimento alguno entre ellos, y esto no es negado específicamente ni impugnado en la contestación, es de sostenerse esa capacidad.

ID.—DEFINICIÓN—LEY XI DE TORO—RECONOCIMIENTO POR PARTE DEL PADRE.—De acuerdo con la Ley XI de Toro, son hijos naturales los nacidos de padres que al tiempo de la concepción y del nacimiento podían casarse justamente y sin dispensación con tal que el padre los haya reconocido; siendo necesario, según dicha ley, que exista el reconocimiento por parte del padre para que pueda ser obligado a ejecutarlo.

LITIS PENDENCIA—CONTESTACIÓN A LA ALEGACIÓN DE LITIS PENDENCIA—DESISTIMIENTO DE LA APELACIÓN.—Es una buena contestación a la alegación de *litis pendencia* de una acción anterior por la misma causa, el hecho de haberse desistido de la primera, ya sea el desistimiento anterior o posterior a la presentación de la alegación, siempre que el desistimiento se haga antes de celebrarse el segundo juicio.

HIJOS NATURALES—LEY XI DE TORO—INCONGRUENCIA ENTRE LA DEMANDA Y LA SENTENCIA.—Si bien en la demanda en este caso sólo se pide que se declare al demandante hijo natural del demandado, mientras que en la sentencia se declara que el demandante es hijo natural reconocido del demandado, no existe por ello incongruencia entre la demanda y la sentencia, pues la declaración de hijo natural no puede hacerse sin la existencia de actos demostrativos del reconocimiento, según la definición que da la Ley XI de Toro.

PRUEBAS—PRUEBA ORAL DEL CONTENIDO DE UN ESCRITO.—No puede admitirse prueba oral del contenido de un escrito sin antes comprobar su pérdida y su identidad.

TESTIGOS—PRUEBAS SOBRE EL CONTENIDO DE UN ESCRITO—EXCEPCIONES.—No es sostenible la excepción a la declaración de un testigo sobre el contenido de

un escrito que se ha extraviado, cuando ya éste es conocido de la corte por la declaración de otro testigo prestada sin objeción alguna.

HIJOS NATURALES—ACTOS DIRECTOS DE LA FAMILIA—POSESIÓN CONTINUA DE ESTADO DE HIJO NATURAL—DOCTRINA DEL TRIBUNAL SUPREMO DE ESPAÑA.— En el presente caso declaró un testigo acerca de manifestaciones que le hiciera una tía del padre demandado respecto a la manutención del hijo demandante, y se resolvió: que esa declaración era pertinente al juicio como tendente a demostrar el concepto de hijo natural en que la tía tenía al demandante; y que su admisión no infringe la doctrina del Tribunal Supremo de España en su sentencia de 17 de julio de 1905 cuando establece que los actos directos de la familia, a que se refiere el artículo 135 del Código Civil Español, son aquellos que tienden a demostrar la posesión continua de estado de hijo natural en que se ha hallado el que pretende el reconocimiento, pero no los que haya podido realizar alguno de los parientes con relación al pleito.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Herminio Díaz.*

El apelado no compareció.

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

Con fecha 9 de diciembre de 1911 Luis Delannoy presentó demanda ante la Corte dé Distrito de San Juan, Sección 1ª., contra Carlos H. Blondet, basada en las siguientes alegaciones:

*Primera.* Que demandante y demandado son mayores de edad, el primero con residencia en la ciudad de Guayama y el segundo en el pueblo de Río Piedras.

*Segunda.* Que nació en Guayama el 5 de agosto de 1889, siendo su padre natural el demandado Carlos Blondet, y su madre Carmen Delannoy, conocida generalmente por María Teresa Delannoy.

*Tercera.* Que tanto al tiempo de su nacimiento como al de su concepción, Carlos Blondet y Carmen Delannoy vivían en público y notorio concubinato, y ambos eran solteros, libres y seglares, sin parentesco alguno entre ellos de consanguinidad ni afinidad, ni impedimento de crimen o voto.

*Cuarta.* Que durante los primeros años de la infancia del demandante, Carlos Blondet le suministraba todo lo necesario para su subsistencia y la de su madre.

*Quinta.* Que el demandado en frecuentes ocasiones pú-

blica y privadamente ha tratado al demandante como hijo, llamándolo así y presentándolo y teniéndolo como tal.

*Sexta.* Que el demandante ha gozado constantemente del estado de hijo natural del demandado Carlos Blondet, quien ofreció a su madre en distintas fechas y en diversas ocasiones reconocerlo como su hijo natural por los medios legales, no habiendo cumplido su ofrecimiento.

La demanda concluye con la súplica de que se declare por sentencia que el demandante es hijo natural del demandado Carlos Blondet con todos los derechos que el Código Civil reconoce a los hijos naturales, y costas del pleito a cargo del demandado .

A la anterior demanda opuso el demandado la excepción previa de que aquella no aduce hechos suficientes para determinar una causa de acción; y desestimada dicha excepción por orden de 13 de febrero de 1912, el demandado la contestó negando las alegaciones esenciales de la misma y enmendándola luego con otra alegación, consistente en que existe otra acción pendiente entre las mismas partes sobre el mismo objeto por virtud de demanda radicada ante la Corte de Distrito de Guayama y trasladada a la Corte de Distrito de San Juan.

Celebrado el juicio, en el que ambas partes propusieron las pruebas que estimaron conducentes a sus respectivas defensas, la corte inferior bajo el epígrafe de *"Findings"* declaró probado:

"Que el demandante Luis Delannoy nació en Guayama allá por el mes de agosto de 1889, siendo sus padres naturales el demandado Carlos H. Blondet y Carmen Delannoy.

"Que tanto al tiempo del nacimiento como al de la concepción del demandante, Carlos Blondet y Carmen Delannoy eran solteros, no existiendo en ambas fechas ningún impedimento legal para que hubiesen podido contraer matrimonio.

"Que el demandante Luis Delannoy es hijo reconocido del demandado Carlos Blondet de acuerdo con la ley en vigor en la fecha de su nacimiento.

"Que el día 8 de mayo de 1912, cuando se inició la vista de esta causa, no existía ninguna acción pendiente entre las mismas partes y sobre el mismo objeto, pues el pleito 4787 radicado en la Corte de Distrito de Guayama y trasladado a esta Corte de Distrito de San Juan, fué sobreseído por esta corte a petición del demandante el día 7 de mayo de 1912."

Bajo esas conclusiones la expresada corte de San Juan dictó sentencia en 29 de Mayo de 1912, por la que declara con lugar la demanda y en su consecuencia que el demandante Luis Delannoy es hijo natural reconocido del demandado Carlos H. Blondet, condenando a éste a tener al demandante por tal hijo, con derecho a llevar su apellido y los demás inherentes a tal condición, y al pago de las costas y gastos que se justifiquen.

En 4 de junio siguiente el demandado notificó al demandante su propósito de solicitar un nuevo juicio, a cuyo fin presentaría oportunamente una moción fundada en los siguientes motivos:

(*a*) En el descubrimiento de nueva evidencia, esencial, cuya existencia ignoraba con anterioridad al juicio celebrado, y ha venido a descubrir después de su celebración, a pesar de haber empleado una razonable diligencia en descubrir toda la pertinente al caso.

(*b*) En que la evidencia del demandante no es suficiente para sostener los *findings of facts* en que dicho fallo se funda.

(*c*) En que la corte cometió errores de derecho durante el juicio, habiendo sido tales errores debidamente excepcionados.

La expresada moción sería acompañada de *affidavits* y se basaría además en las minutas de la corte, en el récord taquigráfico y en un *bill* de excepciones y exposición del caso.

La moción de nuevo juicio fué presentada en 9 de agosto de 1912 y en ella alega el demandado que según el pliego de

exposición del caso y de excepciones ya archivado para su aprobación, se habían cometido en la sentencia los errores de hecho y de derecho que en el pliego se determinan y hacen que la sentencia final sea contraria a la ley, siendo los errores de derecho los siguientes:

*Primero.* Que la sentencia es incongruente con la única acción que en la demanda se ejercita, habiéndose infringido con ella la Regla 4ª. y el artículo 131 del Código Civil Español, en relación con el artículo 135 del mismo código, y la doctrina sentada en el caso de *Amsterdam v. Puente,* 16 D. P. R., 554, pues en la demanda sólo se pide que se declare al demandante hijo natural del demandado Carlos H. Blondet, con todos los derechos que el Código Civil otorga a los hijos naturales, mientras que en la sentencia se declara que el demandante es hijo natural reconocido de Carlos H. Blondet.

*Segundo.* Que se ha infringido el principio *actore non probante reus est absolvendus,* comprendido en la regla de evidencia que al actor le corresponde la prueba de sus alegaciones negadas en la contestación a la demanda o que estén en *issue,* pues el actor en el presente caso no ha probado ni la fecha de su nacimiento, ni su filiación paterna y materna, ni la posesión de estado por actos directos repetidos y constantes de Blondet o de su familia directa, ni que su padre lo haya reconocido en cualquiera de las tres únicas formas en que puede hacerse el reconocimiento de un hijo.

*Tercero.* Que también se ha infringido el principio de que no puede admitirse prueba oral del contenido de un escrito sin antes comprobar su pérdida y su identidad, cuyo principio ha sido infringido al admitir como prueba una supuesta carta de Blondet a la madre del demandante.

*Cuarto.* Infracción del principio establecido por la jurisprudencia española de que no los actos de un pariente cualquiera del presunto padre, sino los de éste o de su familia directa, son los que pueden demostrar la posesión de estado, cuyo principio infringió la corte inferior admitiendo como

base para la demostración de posesión de estado, actos realizados por una tía del demandado Blondet.

*Quinto.* Infracción del principio de procedimiento de que no puede dividirse la continencia de una causa, siguiéndose a la vez dos pleitos entre las mismas partes y sobre la misma cuestión.

Alega además el demandado en su moción solicitando nuevo juicio, que según aparece del pliego de excepciones y exposición del caso la sentencia dictada por la corte es contraria a la evidencia por las razones que en el pliego se consignan más ampliamente, el cual se hace parte de la moción

Y concluye alegando que según puede verse en los *affidavits* que se acompañan, el demandado ha descubierto nuevas pruebas esenciales para su defensa, no cumulativas ni tendentes a impugnar evidencia que haya sido introducida, ya en forma documental o en forma oral, no habiéndole sido antes ni durante la celebración del juicio conocida esa nueva evidencia, a pesar de haber empleado la debida diligencia para conseguirla.

La moción de nuevo juicio que había de basarse en *affidavits,* en las minutas de la corte, en el récord taquigráfico y en un pliego de exposición del caso y excepciones, vino a quedar basada únicamente en *affidavits* y en un pliego de exposición del caso y excepciones; y fué declarada sin lugar por orden de 16 de septiembre de 1913, contra la cual interpuso la parte demandada recurso de apelación para ante esta Corte Suprema.

Examinemos los fundamentos en que se basa la pretensión de nuevo juicio, empezando por el primero de ellos que es el comprendido en el número 3°. del artículo 221 del Código de Enjuiciamiento Civil, a saber: "Descubrimiento de nuevas pruebas que sean importantes para la parte solicitante, las cuales, a pesar de razonables diligencias no pudo descubrir y presentar en el juicio."

·Al resolver el caso de *Collazo* v. *The Juncos Central Co.*, 16 D. P. R., 142 y 143, dijo esta corte:

"La concesión de nuevos juicios con motivo del descubrimiento de nuevas pruebas ha sido siempre una, cuestión que depende de la sana discreción del tribunal sentenciador, y la resolución de dicho tribunal dictada en tales mociones, generalmente no será modificada a no ser que se muestre que ha habido abuso de dicha discreción. *Spottiswood* v. *Weir*, 80 Cal., 448.. Véase también a Hayne sobre Nuevo juicio y apelación, artículo 87, citado en el tomo 73 de California, página 248. Al resolver tales mociones se rigen las cortes por reglas bien establecidas, las que han sido comprendidas por Hayne en el artículo 88, como sigue:

" 'Para que una parte tenga derecho a un nuevo juicio por el fundamento de haber descubierto nuevas pruebas, debe aparecer: 1. Que la prueba y no meramente su materialidad se ha descubierto nuevamente; 2. Que la prueba no es meramente cumulativa; 3. Que sea de tal clase que produzca un resultado distinto en el nuevo juicio del caso; 4. Que la parte no pudo, no obstante la razonable diligencia ejercitada, descubrirla y producirla en el juicio; y 5. Que estos hechos se muestren por medio de la mejor prueba que pueda presentarse.' (1 Hayne sobre Nuevo Juicio y Apelación, art. 88.) *People* v. *Sutton*, 73 Cal., 247.

"Esta doctrina se sienta también en las siguientes decisiones del mismo ilustrado tribunal, a saber: *Russell* v. *Dennison*, 45 Cal., 337; *Jones* v. *Jones*, 38 Cal., 584; *Arnold* v. *Skaggs*, 35 Cal., 684; *Leirtsky* v. *Johnson*, 35 Cal., 41; *Baker* v. *Joseph*, 16 Cal., 174."

"También puede citarse un caso de Texas en apoyo de la regla establecida por Hayne, a saber: *Sabine y E. T. Ry. Co.* v. *Wood*, 69 Tex., 682. Pudieran citarse otros muchos casos, tanto civiles como criminales, que muestran que estas reglas son casi, sino totalmente universales."

En el caso de *Fajardo et al.* v. *Tió*, 17 D. P. R., 342, nos expresamos así:

"En cuanto a las pruebas nuevamente descubiertas, la ley está clara en cuanto a que deben ser, en primer lugar, importantes para el peticionario, y, en segundo lugar, deben ser, no solamente pruebas nuevamente descubiertas, sino que también deben ser tales que a pesar de diligencias razonables no pudieron descubrirse y presentarse en el juicio." Artículo 221 del Código de Enjuiciamiento

Civil, Leyes de P. R., 1904, p. 229.; *El Pueblo* v. *Goitia*, 5 D. P. R., 246; *Silva* v. *Salamanca et al.*, 14 D. P. R., 543, y casos citados.

"Los hechos en cuanto a la importancia de las pruebas y a que son nuevamente descubiertas y que no pudieron descubrirse y presentarse en el juicio a pesar de diligencias razonables y que, realmente el peticionario practicó tales diligencias, deben ser todos expuestos en la moción solicitando nuevo juicio, y también deben probarse mediante declaraciones juradas o de otro modo, a satisfacción de la corte, la que posee una discreción amplia para conceder o denegar nuevos juicios por este fundamento." *Viso* v. *Porto Rico Sugar Company*, 16 D. P. R., 788; 37 American Digest Century, columnas 1113 *et seq.*

"Después de todo, la principal cuestión aquí resuelta versa sobre si la corte de distrito cometió ·o nó abuso alguno de discreción al negar el nuevo juicio por este fundamento, pues tal abuso debe probarse para sostener una apelación con tal motivo." *Crystal Lake Ice Co.* v. *McAuley*, 75 Cal., 632; *Harrison* v. *S. St. Ry. Co.*, 116 Cal., 161; *Spottiswood* v. *Weir*, 80 Cal., 448; *Hall* v. *Jensen*, 14 Tdaho, 170.

"Y claramente que una moción solicitando un nuevo juicio, basada en pruebas nuevamente descubiertas, se dirige en gran medida a la discreción de la corte sentenciadora, que no ha mucho ha oído las declaraciones sobre el caso, de los labios de los testigos mismos y que puede determinar si las pruebas que el peticionario desea que sean apreciadas cambiarían o nó, de ser admitidas, el resultado del juicio anterior, o serían causa de que se dictara una sentencia diferente. De obtenerse el mismo resultado en un nuevo juicio, teniendo la corte a la vista las pruebas nuevamente descubiertas, sería un procedimiento infructuoso e inútil conceder un nuevo juicio y volver a examinar el caso para satisfacer un capricho o antojo de la parte que perdiera en la primera contienda judicial." *Byrne* v. *Reed*, 75 Cal., 282.

"Como no se haya cometido una injusticia manifiesta al denegar el nuevo juicio, el tribunal de apelación no habrá de anular lá discreción que aparentemente ha sido debidamente ejercitada al denegar el nuevo juicio. (Véanse *Silva* v. *Salamanca et al.*, resuelto por este tribunal el 12 de junio de 1908, y *Viso* v. *P. R. Sugar Co.*, también resuelto por este tribunal el 15 de diciembre 1910, y los numerosos casos citados en esas opiniones.)"

Los *affidavits* presentados por el demandado para pedir la celebración de nuevo juicio por el fundamento de haber

descubierto nuevas pruebas, tienden a demostrar: (*a*) Que
por el tiempo del nacimiento de Luis Delannoy, en la casa
de la abuela de éste se celebraban con frecuencia por la noche
fiestas a las que concurría participando de ellas, no sola-
mente la madre del demandante sino también otras señori-
tas hermanas de ella; (*b*) que dos de las hermanas de la
madre del demandante tuvieron hijos en la propia casa donde
vivían con la madre del demandante; (*c*) que el padre del
niño que tuvo una de las hermanas de la madre del deman-
dante, cuyo niño murió, fué un primo del demandado llamado
Lilí Blondet y Delannoy; (*d*) que la propia madre del deman-
dante María Teresa Delannoy, antes de ser madre o por los
días en que lo fué no tuvo otro novio que un chico llamado
Juan Díaz a quien se le tiene y se le ha tenido siempre en
Guayama por padre del demandante; (*e*) que la misma Ma-
ría Teresa Delannoy antes de casarse con su actual esposo
vivió mucho tiempo en concubinato con éste; (*f*) que por los
años de 1889 al 1895 en que el demandado vivió en la finca
"Julia" radicada entre las jurisdicciones de Guayama y Sali-
nas, se inició en la Logia "Legalidad" y sólo iba a ella cuando
se celebraban Tenidas, y siempre de noche; (*g*) que al deman-
dado no se le han conocido en Guayama otros hijos que los
habidos en su legítimo matrimonio; (*h*) que el demandante
nunca ha sido tenido como hijo del demandado, ni por éste
ni por su familia ascendente o descendente.

Ni en el escrito de notificación de propósito de solicitar
un nuevo juicio, ni en la moción de nuevo juicio expresa
el demandado-apelante los actos y diligencias que ejecutó
para descubrir y presentar la nueva prueba, ni tampoco alega
que admitida y practicada esa prueba había de cambiar el
resultado del juicio. La nueva prueba tiende a desvirtuar la
ya practicada en el juicio por la parte demandante, habiendo
tenido el demandado oportunidad para conseguir ese propó-
sito al practicar la suya, pues en el juicio se practicó prueba
para justificar que María Teresa Delannoy por el tiempo
en que nació el demandante no había tenido relaciones amo-

rosas con otros hombres que con el demandado Carlos H.
Blondet, que éste pagó a la comadrona los servicios que le
prestó en su parto, que trató al demandante como hijo, y
también pagó gastos de su educación.

Si fué el demandado negligente en la defensa de sus dere-
chos cúlpese a sí mismo y no venga tardíamente a mostrar
una actividad que en tiempo oportuno pudo desplegar.

La corte inferior procedió con arreglo a ley y a la juris-
prudencia ya establecida por esta corte al denegar la moción
de nuevo juicio por descubrimiento de nuevas pruebas. No
se ha demostrado que hubiera de su parte abuso de discre-
ción.

El segundo motivo alegado para la celebración del nuevo
juicio tal como se consigna en la notificación de intención
de solicitar un nuevo juicio, consiste en que ''La evidencia
del demandante no es suficiente para sostener los *findings
of facts* en que el fallo se funda,'' mientras que en la moción
de nuevo juicio ese mismo motivo se hace consistir en que
''según aparece del pliego de excepciones y exposición del
caso, la sentencia dictada por la Corte es contraria a la evi-
dencia y a la ley por las razones que en dicho pliego de excep-
ciones se consignan más ampliamente y se hacen parte de
dicha moción.''

El artículo 221 del Código de Enjuiciamiento Civil ex-
presa las causas que pueden dar lugar a la concesión de un
nuevo juicio, y entre ellas encontramos marcada con el nú-
mero 5, la de insuficiencia de la prueba para justificar la
sentencia o decisión o que ésta fuera contraria a la ley, siendo
esa la causa invocada por el demandado, por más que no se
haya ajustado en su expresión a las palabras de la ley, que
es la mejor práctica.

Acerca de dicha causa establece el último párrafo del
segundo apartado del número 3 del artículo 223 que ''cuando
en la notificación de la moción se consignare como funda-
mento de ella la insuficiencia de las pruebas para justifi-
car la sentencia u otra decisión, la exposición especificará

los particulares en que se alegare consistir la insuficiencia de la prueba.''

Hemos examinado el escrito de exposición del caso y pliego de excepciones que ha servido de base a la parte apelante para solicitar un nuevo juicio por el motivo que estamos considerando y a su final aparece una especificación de errores de hecho y de derecho que el demandado afirma haberse cometido *durante la celebración del juicio y con la sentencia.*

Los errores de hecho alegados son los siguientes:

1. Declarar probado que el demandante Luis Delannoy nació en agosto de 1889 y que es hijo natural del demandado Carlos Blondet y Carmen Delannoy.

2. Declarar probado que tanto al tiempo del nacimiento como al tiempo de la concepción del demandante Carlos H. Blondet y Carmen Delannoy eran solteros y que no existía en ambas fechas ningún impedimento legal para que hubiesen podido contraer matrimonio.

3. Declarar probado que el demandante es hijo reconocido por Carlos Blondet, de acuerdo con la ley en vigor en la fecha del nacimiento.

4. Declarar probado que el día 8 de mayo cuando comenzó la vista del pleito no existía ninguna acción pendiente entre las partes sobre el mismo objeto.

Los errores de derecho consignados por la parte demandada en el escrito de exposición del caso son los mismos que relacionó en la moción solicitando el nuevo juicio y que ya dejamos consignados al ocuparnos de dicha moción.

Estimando alegados para mostrar la insuficiencia de la prueba los errores de hecho que con ese nombre enumera la parte apelante, pues a tal fin conducen, por más que el demandado afirma haberse cometido durante el juicio y con la sentencia, pasemos a examinarlos por el mismo orden en que han sido expuestos.

Fúndase el primer error en que no hay más prueba de la fecha del nacimiento de Luis Delannoy que la partida

de bautismo presentada por el actor, cuya partida fué admitida por la corte, no para evidenciar el día de su nacimiento, sino solamente el hecho del bautismo y la fecha en que tuvo lugar; en que el peso de la prueba traída al juicio para demostrar la maternidad natural de Carmen Delannoy está en favor de la negativa, pues en la partida de bautismo aparece como madre del demandante María Teresa Delannoy sin que se exprese que ésta fuera conocida o se le designara comúnmente con el nombre de Carmen Delannoy; y en que el peso de la prueba introducida por el actor en cuanto a la simple paternidad de Carlos Blondet, está también en favor de una negativa.

La conclusión a que llegó el juez sentenciador al estimar que el demandante nació en agosto de 1889, se sostiene por las declaraciones de María Teresa Delannoy, según la cual el demandante tendría 14 meses cuando se bautizó, y de José Alonso, el cual afirma que al ser bautizado tendría de doce a catorce meses de edad, examinando esas declaraciones en relación con la partida de bautismo del demandante, el cual, según dicho documento, fué bautizado en 6 de noviembre de 1890. Además, de haberse cometido error en la expresión de la fecha del nacimiento del demandante, hubiera sido de tan escasa importancia que no hubiera influído en el resultado del juicio.

En la partida de bautismo del demandante aparece éste como hijo natural de María Teresa Delannoy, sin que se exprese que se la conoce con el nombre de Carmen Delannoy; pero los testigos Nicolás Alonso, José del mismo apellido, y Tomás Vanks, la designan con ambos nombres y no puede por tanto decirse que falta prueba de la alegación de que Carmen Delannoy sea conocida con el nombre de María Teresa Delannoy. Además, afirmando como ha afirmado María Teresa Delannoy al declarar que ese es su nombre, y designándola con dicho nombre varios testigos, no hay duda que ella es la madre del demandante a que se refiere la partida

de nacimiento de éste, siendo indiferente a los fines del juicio el que se la conozca también con el nombre de Carmen.

Para sostener el demandado que el peso de la prueba introducida por el actor en cuanto a la simple paternidad de Carlos Blondet está en favor de la negativa, hace un examen detenido de las declaraciones de los testigos de la parte demandante, María Teresa Delannoy, Valeriano Ortiz, Cruz Guerra, Isidro, Nicolás y José Alonso, Angel Pacheco, Tomás Vanks, y Luis' Delannoy, y después de argumentar y discutir sobre el alcance de dicha prueba tendente toda ella a demostrar la filiación y reconocimiento de Luis Delannoy en relación con el demandado Carlos H. Blondet, concluye con las siguientes palabras:

"Y esa es toda la prueba del actor. No queremos por ahora afirmar que haya un conflicto de evidencia con la de la parte contraria por más que exista, y sí patentizar que los mismos medios probatorios que ha utilizado la parte demandante han debilitado la demostración de sus asertos hasta el punto de poderse afirmar que su prueba se contradice a sí misma."

Si hay el conflicto de evidencia que indica la parte apelante, a la corte inferior incumbía dirimirlo como lo dirimió a favor de la parte demandante, y si los testigos incurrieron en contradicciones, también a esa misma corte incumbía apreciar el valor probatorio de sus declaraciones como también lo apreció a favor de la parte demandante, sin que a esta corte de apelación sea permitido ir contra la apreciación hecha por la corte inferior al resolver una pretensión de nuevo juicio dentro de su facultad discrecional de la que no aparece haya abusado en el presente caso, en que la filiación natural del demandante con relación al demandado se sostiene por la evidencia aportada al juicio.

Tampoco se ha cometido el segundo error de hecho alegado por la parte apelante al establecer la corte inferior que María Teresa Delannoy y Carlos H. Blondet eran solteros al tiempo de la concepción y nacimiento del demandante, y que no existía en ambas fechas ningún impedimento

legal entre ellos para que hubiesen podido contraer matri-
monio.

Ante todo debemos hacer constar que la demanda fué.ju-
rada por la parte actora y que la tercera alegación de ella
concerniente a dichos particulares fué contestada por el de-
mandado también con juramento en los siguientes términos:

"Se niega el hecho tercero de la demanda en cuanto a las rela-
ciones del demandado con la madre del demandante."

Esa negativa, como se vé, no fué absoluta sino limitada
a las relaciones de concubinato entre el demandado y la madre
del demandante, y por tanto Blondet no negó que él y María
Teresa Delannoy al tiempo de la concepción y del nacimiento
de Luis Delannoy pudieran casarse justamente y sin dispen-
sación, como dice la Ley XI de Toro.

El artículo 110 del Código de Enjuiciamiento Civil en su
número 2º. establece que, cuando se jurare la demanda, la
negación de cada alegación impugnada deberá ser específica,
y el 132 establece que toda alegación esencial de la demanda
no impugnada en la contestación se tendrá por cierta para
los efectos de la acción.

La alegación jurada en la demanda de que María Teresa
Delannoy y Carlos H. Blondet, eran solteros y sin impedi-
mento alguno entre ellos para contraer matrimonio en la
fecha de la concepción y del nacimiento del demandante, no
fué negada específicamente ni impugnada en la contestación,
y por tanto debe tenerse por cierta para los efectos de la
acción.

Pero es que sobre esa alegación de la demanda se sumi-
nistró prueba por la misma parte demandante, consistente
en la declaración de María Teresa Delannoy, la cual afirmó
que entre ella y Blondet existieron relaciones amorosas por
espacio de 8 ó 10 meses, siendo ambos solteros, y siendo ella
soltera también cuando nació el fruto de esas relaciones.

Aunque no hubiera habido prueba alguna acerca de la
capacidad de María Teresa Delannoy y Carlos Blondet para

contraer matrimonio en la fecha de la concepción y del nacimiento del demandante, sería de sostenerse esa capacidad por falta de prueba en contrario con arreglo a la jurisprudencia ya establecida por esta corte en los casos de *Lange* v. *Avilés,* 2 S. P. R., 611, y de *Silva* v. *Salamanca y otros,* 14 D. P. R., 545.

Tampoco cometió la corte inferior el tercer error que se le imputa consistente en declarar probado que el demandante es hijo reconocido del demandado Carlos H. Blondet de acuerdo con la ley en vigor en la fecha del nacimiento.

Alégase para sostener dicho error que no hay una sola palabra en la evidencia que demuestre que Carlos H. Blondet ha realizado el reconocimiento de Luis Delannoy en cualquiera de las tres únicas formas establecidas por el Código Civil.

Ciertamente que el demandante no había sido reconocido por Carlos Blondet como hijo natural suyo en forma alguna de las establecidas por el Código citado, y de ahí la necesidad de que se interpusiera la demanda para que Blondet fuera obligado a dicho reconocimiento, siendo necesario para llegar a ese fin aportar al juicio prueba demostrativa de actos que lo determinaran.

Esa prueba fué aportada al juicio, y en virtud de ella la corte inferior estimó que Blondet había reconocido al demandante, no en forma auténtica y fehaciente que hiciera innecesario el ejercicio de la acción de reconocimiento, sino por medio de actos demostrativos del reconocimiento, al que por tanto debía ser obligado por sentencia ya que él voluntariamente no se prestaba al reconocimiento.

La sentencia guarda congruencia con la Ley XI de Toro que regula el presente caso, según la cual son hijos naturales los nacidos de padres que al tiempo de la concepción y del nacimiento podían casarse justamente y sin dispensación con tal que el padre los haya reconocido. Según esa ley es necesario que exista el reconocimiento por parte del padre para que éste pueda ser obligado a ejecutarlo. En

el presente caso se ha demostrado que existe el reconoci-
miento, y por existir es que se obliga al demandado por sen-
tencia a tener al demandante por hijo natural.

Finalmente, en cuanto al último error consistente en de-
clarar probado que el día 8 de mayo cuando comenzó la vista
del pleito no existía ninguna acción pendiente entre las par-
tes, debemos consignar que aún en el supuesto de que ese
error fuera de hecho y no de derecho, tampoco se habría come-
tido.

Afirma la parte apelante que si bien el pleito No. 4787
radicado en la Corte de Distrito de Guayama y trasladado
a la de San Juan fué sobreseído por ésta a petición del de-
mandante el día antes de la celebración del juicio, no hay
prueba ni puede haberla de que el sobreseimiento se hiciera
con notificación al demandado personado ·ya en aquel juicio,
ni de que éste hubiese renunciado tal notificación, y mucho
menos de que él hubiese renunciado también el derecho de
apelar, por cuyas razones dicho sobreseimiento en el día del
juicio lo mismo que cuando se pronunció la sentencia no
era firme y estaba por tanto pendiente la acción ejercitada
en el referido pleito.

Resulta del escrito de exposición del caso que en la Corte
de Distrito de Guayama comenzó en junio de 1911 un pleito
entre *Luis Delannoy, demandante,* v. *Charles H. Blondet,*
*demandado,* sobre filiación, y que a petición del demandante
en ese mismo mes se dictó una orden de traslado a la Corte
de Distrito de San Juan, en cuya Sección 1ª., había de trami-
tarse; que en mayo 7, 1912, fué presentada por la parte
demandante ante dicha corte una moción para que se le tu-
viera por desistido de la acción entablada con las costas a
su cargo; que ese escrito de desistimiento fué notificado en
la misma fecha a la representación del demandado y que
en la misma fecha también se dictó la orden teniendo por
desistido al demandante.

El presente caso fué llamado a juicio oral al siguiente
día 8 de mayo de 1912.

El Código de Enjuiciamiento Civil en su artículo 192, No. 1, establece que el demandante podrá desistir de la demanda en cualquier tiempo antes del juicio, previo pago de costas, salvas las excepciones que menciona y que no concurren en el caso de cuyo desistimiento se trata.

Según la mayoría de las decisiones modernas, la desestimación o abandono en tiempo oportuno de una acción anterior destruye la defensa de *litis pendencia.*

En los casos resueltos más recientemente, y según la opinión de la mayoría de las autoridades, se sostiene que es una buena contestación a la alegación de *litis pendencia* de una acción anterior por la misma causa el hecho de haberse desistido de la primera, ya sea el desistimiento anterior o posterior a la presentación de la alegación. De acuerdo con esta doctrina, la alegación será desestimada a menos que el primer pleito esté pendiente al celebrarse el juicio del segundo. I Cyc., 24 y 25.

No existe, pues la excepción de *litis pendencia.*

Consideremos ahora los errores de derecho relacionados por la parte apelante.

El primer error consiste en incongruencia de la sentencia con la demanda. Ciertamente que en la demanda sólo se pidió que el demandante fuera declarado hijo natural del demandado, pero como esa declaratoria no puede hacerse sin la existencia de actos demostrativos del reconocimiento de hijo natural del demandante con relación al demandado según la definición que de los hijos naturales nos da la Ley XI de Toro, es lógico deducir que la sentencia guarda congruencia con la demanda. Aquí damos por reproducida la doctrina expuesta al discutir el tercer error de hecho.

El segundo error de derecho consiste en la infracción del principio *actore non probante reus est absolvendus.* Dicho error puede considerarse como determinante de la insuficiencia de la prueba para sostener la sentencia.

Para fundar ese error sólo expresa el demandado-apelante que el actor no ha probado ni la fecha de su nacimiento,

ni su filiación paterna y materna, ni la posesión de estado
por actos directos, repetidos y constantes de Blondet o de
su familia directa, ni que su padre lo haya reconocido en
cualquiera de las tres únicas formas en que puede hacerse
el reconocimiento de un hijo. Para impugnar la existencia
de dicho error nos referimos a lo que ya hemos dicho al dis-
cutir los errores de hecho 1°., 2°. y 3°., respecto de los cuales
aceptamos que el demandado especificó los particulares en
que consiste la insuficiencia de la prueba, según el precepto
consignado en el último párrafo del segundo apartado del
número 3 del artículo 223 del Código de Enjuiciamiento Civil
que ya antes hemos dejado transcrito.

Los errores de derecho marcados con los números 3°. y
4°., aunque alegados para sostener que la sentencia es con-
traria a la ley, pueden sin embargo considerarse como erro-
res de derecho cometidos durante el juicio, causa en que tam-
bién se funda la moción de nuevo juicio, pues el tercero con-
siste en haberse infringido el principio de que no puede admi-
tirse prueba oral del contenido de un escrito sin antes com-
probar su pérdida y su identidad, cuyo principio se dice fué
infringido por la corte inferior al admitir como prueba una
supuesta carta de Blondet a la madre del demandante, con-
sistiendo el error número 4 en haber admitido la corte infe-
rior como base para la demostración de la posesión de estado
por parte del demandante, actos realizados por una tía o
pariente distante del Sr. Blondet, contra la jurisprudencia
establecida por el Tribunal Supremo de España de que no
los actos del pariente aislado sino los del padre o de la fami-
lia directa de éste son los que pueden demostrar la posesión
de estado.

Ni uno ni otro error ha existido.

En cuanto al tercero, aparece de la exposición del caso
que después de haber declarado María Teresa Delannoy y
su consorte Angel Pacheco acerca de una carta que a la pri-
mera había dirigido el demandado Blondet cuando tenía pro-
yectado celebrar matrimonio con Pacheco el cual se enteró

de su contenido rompiéndola luego, la corte inferior admitió prueba sobre el contenido de dicha carta. Cuando ya la María Teresa había declarado sobre el contenido de la carta sin oposición alguna por parte del demandado, la corte permitió que también declarase sobre el mismo particular el Pacheco, a cuya admisión de prueba opuso excepción la parte demandada. Tal excepción aparece destituída de todo fundamento, pues al admitir la declaración de Pacheco sobre el contenido de la carta ya estaba justificada la pérdida de la misma por su rotura, y su contenido era ya conocido a la corte por la declaración de María Teresa Delannoy prestada sin tomar excepción la parte demandada. No fué infringida regla alguna de evidencia.

En cuanto al error de derecho marcado con el número 4, aparece que al declarar Francisco Cintrón, testigo del demandante, se expresa en los siguientes términos:

"Conozco a Don Carlos Blondet, a Doña María Teresa Delannoy y a Doña Camila Gaudineau, la cual era tía del Sr. Blondet. Conozco a Luis Delannoy; en mi tienda recuerdo que la Señora Camila llevaba cuenta conmigo, cuenta que arreglaba mensualmente cuando ella recibía sus rentas, y llevando esa cuenta un día se me presentó frente de la casa como de costumbre, a la parte de afuera, fuí a donde ella que entraba con el sobrino, como ella le decía, Luis Delannoy, y ella me dijo que quería que le abriese una cuenta particular en nombre de su sobrino Carlos Blondet para la manutención de su hijo."

Pidió el demandado que se eliminara esa declaración de Francisco Cintrón, pues se oponía a que constara la manifestación que se dice hecha por la Señora Camila que se afirma ser parienta del Sr. Blondet, y se oponía igualmente a que constaran las manifestaciones del testigo tendentes a demostrar que dicha señora trataba como sobrino a Carlos Blondet.

El juez entendió que era admisible la prueba y el demandado consignó su excepción fundándose en que, según las reglas establecidas por la jurisprudencia, las declaraciones de tales parientes no son admisibles para demostrar las rela-

ciones del demandante con el demandado, ni las del demandante con la persona que se dice hizo la declaración.

No vemos que se causara perjuicio alguno a Blondet con la declaración inserta, pues en cuanto a su parentesco de sobríno con Doña Camila Gaudineau, el mismo Blondet lo confiesa en su declaración, y ese mismo parentesco ha sido aseverado por otros testigos como María Teresa Delannoy e Isidro Alonso, sin que a sus declaraciones se opusiera el demandado. Que Doña Camila trataba de sobríno al demandante, lo dice también el testigo Isidro Alonso; y que le tenía mucho cariño y se lo llevaba a su casa lo relata también la María Teresa Delannoy sin que contra tales manifestaciones se tomara excepción alguna. El relato hecho por el testigo Francisco Cintrón acerca de haberle dicho la Doña Camila que quería le abriese una cuenta particular en nombre de su sobríno Carlos Blondet para la manutención de su·hijo, refiriéndose a Luis Delannoy, era pertinente al juicio como tendente a demostrar el concepto de hijo natural de Carlos Blondet en que Doña Camila, tía de éste, tenía al demandante, y no vemos que al admitir esa prueba haya sido infringida la sentencia del Tribunal Supremo de España de 17 de junio, 1905, invocada por el recurrente, cuya sentencia establece que los actos directos de la familia a que se refiere el artículo 135 del Código Civil Español son aquellos que tienden a demostrar la posesión continua del estado de hijo natural en que se ha hallado el que pretende el reconocimiento, pero no a los que haya podido realizar alguno de los parientes con relación al pleito. Jurisprudencia Civil, Tomo 101, p. 667.

El quinto error de derecho ha sido discutido al examinar el cuarto de los de hecho y para impugnarlo reproducimos aquí la doctrina que entonces expusimos.

Por las razones expuestas es de confirmarse la resolución apelada.

> *Confirmada la orden apelada denegatoria de nuevo juicio.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Asociado Sr. Hutchison no formó parte del tribunal en la vista de este caso.