CARMEN VICENTA RIVERA, demandante y apelada, *v.* SUCESIÓN de INOCENCIO DÍAZ, compuesta por su viuda JUANA ASIA LEBRÓN y sus hijos legítimos FRANCISCO Y VICENTE DÍAZ, demandada y apelante.

No. 3938.—*Visto:* Diciembre 15, 1926. *Resuelto:* Abril 5, 1927.

1. HIJOS NATURALES—DEL RECONOCIMIENTO—EN GENERAL—CONDICIONES PRECEDENTES—LIBERTAD DE LOS PADRES PARA CASARSE.—Para que pueda reconocerse la condición de natural a un hijo ilegítimo es necesario que sus padres sean libres en el momento de la concepción o en el del nacimiento.

2. HIJOS NATURALES—DEL RECONOCIMIENTO—RECONOCIMIENTO OBLIGATORIO—ACCIÓN DE RECONOCIMIENTO O FILIACIÓN—EVIDENCIA—PRESUNCIONES—LIBERTAD DE LOS PADRES PARA CASARSE.—Probada la paternidad y el reconocimiento, se presume, salvo prueba de contrario, que los padres en el momento de la concepción y del nacimiento podían casarse justamente y sin dispensa.

SENTENCIA de *Miguel A. Muñoz,* J. (San Juan), declarando con lugar la demanda, sin costas. *Confirmada.*

*Blondet & Campillo,* abogados de la apelante; *Eugenio Font Suárez,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Versa este pleito sobre reconocimiento de una hija natural y reclamación de herencia. En la demanda se hacen las alegaciones usuales en tales casos. La contestación contiene una negación general y específica de los hechos en que se funda la acción.

Fué el pleito a juicio y la corte lo decidió en contra de la demandante expresando que a tal resolución llegaba porque si bien la prueba demostró que la dicha demandante era hija del causante de la Sucesión demandada que la tuvo de su concubina Monserrate Rivera y la reconoció como tal, no demostró de igual modo el extremo de que Díaz fuera un hombre libre para contraer matrimonio al tiempo de la concepción de la demandante, necesario para que a la hija pueda reconocérsele la condición de natural.

La demandante pidió al juez de distrito que reconsiderara su sentencia y así lo hizo el juez, decidiendo que a la luz de la jurisprudencia que se le había citado también de-

bía estimarse comprobado el extremo de la libertad de los padres para contraer matrimonio, declarando, en su consecuencia, con lugar la demanda en lo que se refiere al reconocimiento. En cuanto a la reclamación de herencia decidió que si bien el derecho de la hija era claro, no estaba la corte en condiciones de dictar el pronunciamiento específico que se le pedía. Se solicitó que la corte declarara que la hija tenía derecho a la mitad de la pensión que de acuerdo con la Ley No. 68 de 1921 sobre "Pensiones a los Miembros del Cuerpo de la Policía Insular," venía percibiendo la viuda de Inocencio Díaz.

No conforme la Sucesión demandada, apeló, alegando como único error el cometido a su juicio por la corte "al establecer que el demandante no tiene que probar que sus padres en el momento de la concepción o del nacimiento de la demandante eran solteros y no tenían impedimento alguno para contraer matrimonio."

Lo resuelto por la corte de distrito, fué, después de citar los casos de *Silva* v. *Salamanca et al.*, 14 D.P.R. 543; *Pérez Villamil* v. *Romano et al.*, 19 D.P.R. 875; *Delannoy* v. *Blondet*, 22 D.P.R. 235 y *Lange* v. *Avilés*, 2 D.P.R. 602, lo que sigue:

". . . . y se declara con lugar la demanda en el sentido de que habiéndose probado que Monserrate Rivera vivió con Inocencio Díaz por algún tiempo en Ponce, que durante ese tiempo fué concebida la niña Carmen Vicenta Rivera, la cual nació en Mayagüez, y que después de su nacimiento continuó llevando relaciones de familia con Inocencio Díaz, quien la reconocía como su hija, habiéndose probado que refiriéndose a una época dos meses después del nacimiento de la niña la madre de ésta declaró que Inocencio Díaz era un hombre soltero; entiendo que esa prueba establece también presunción de la soltería de Inocencio Díaz, aun cuando el demandante no tiene que probar este extremo; y, por estos motivos declara la corte a Carmen Vicenta Rivera hija natural de Inocencio Díaz, con todos los derechos que le confiere el Código Civil como tal."

[1 2] Que para que pueda reconocerse la condición de

natural a un hijo ilegítimo es necesario que sus padres sean libres en el momento de la concepción o en el del nacimiento, es evidente. Bajo esa base se inició la acción en este caso y a tal efecto en la demanda se alega que Inocencio Díaz y Monserrate Rivera siendo solteros vivieron en concubinato y como resultado de ello fué concebida y nació la demandante. La cuestión que suscita la verdadera divergencia de criterio entre las partes es la de si debe o no aportarse prueba sobre el estado de libertad de los padres para contraer matrimonio.

El primer caso de Puerto Rico que se cita es el de *Lange* v. *Avilés,* 2 S.P.R. 602. La opinión fué emitida por el Juez Presidente Quiñones y en lo pertinente dice:

"... En cuanto a la infracción, que también se alega, de los artículos 325 y 327 del Código Civil, que si bien la demandante no se cuidó de acreditar su estado civil y el de Don Ulises Lange en la forma que requieren dichos artículos para justificar la aptitud legal en que se hallaban para contraer matrimonio en la fecha de la concepción de sus hijos Antonia y Luis Paulino, esta circunstancia no influye para desvirtuar la justicia de la sentencia recurrida al declarar a los citados menores hijos naturales de Don Ulises Lange, toda vez que habiendo sido planteada en la demanda la cuestión relativa a la aptitud legal de la demandante y del Don Ulises para contraer matrimonio en la fecha citada, y no habiendo sido impugnada expresamente aquella apreciación en el escrito de contestación a la demanda por la sucesión demandada, ni menos aducido sobre el particular prueba alguna en contrario, existe a favor de dichos menores la presunción legal *juris tantum* de pertenecer a la clase de hijos naturales, aun sin justificar el estado civil de sus padres en la forma que requieren los precitados artículos del Código Civil, con arreglo a la doctrina jurídica proclamada por el Tribunal Supremo de España en sentencias de doce de noviembre de mil ochocientos cincuenta y ocho y once de octubre de mil ochocientos ochenta y dos, según la que, probada la paternidad por el que aspira a la declaración del hijo natural, como sucede en el presente caso, no necesita acreditar que sus padres en el momento de la concepción o del parto podían casarse justamente y sin dispensación, porque este extremo se presume mientras no se justifique lo contrario, por cuya razón

tampoco puede estimarse como infringido el artículo 1253 del Código Civil que se cita en el segundo motivo del recurso.''

La primera de las sentencias del Tribunal Supremo de España citadas o sea la del 12 de noviembre de 1858 no aporta mucha luz. Su resumen dice:

''Los hijos declarados naturales con relación a la madre gozan de los derechos que a los de esta clase corresponden, salvo si se justifica que están comprendidos en alguna excepción.''

La otra, la de 11 de octubre de 1882, está reportada en 50 Jurisprudencia Civil 110. Se refiere a un caso muy interesante. La Audiencia Territorial de la Habana considerando que si bien los hijos demandantes habían probado que lo eran, no habían demostrado que sus padres pudieran casarse *justamente sin dispensación* al tiempo de la concepción o de su nacimiento, revocó la sentencia apelada favorable a los hijos. Estos establecieron recurso de casación para ante el Tribunal Supremo de España. Alegaron diez y seis infracciones de ley. La 6ª dice:

''La ley 2a. del mismo título y partida, en cuanto explica cuáles son los casos en que corresponde probar al demandado, estando el actor exento de obligación en este punto; y tiene esto lugar cuando el reo niega al demandante la *calidad* que éste se atribuye o da por sentada en su demanda, aduciendo un hecho contrario a la posibilidad de admitir en derecho esa *calidad:* que los actores al notar los hechos y fundamentos de derecho dieron por sentada la aptitud legal en que estuvieron sus padres para contraer matrimonio, no mencionaron ese punto, y limitáronse a fijar las circunstancias que concurrieron en su nacimiento, las atenciones que les prodigó siempre el padre, la educación que les dió y el reconocimiento que a virtud de todos esos actos hizo en público y en privado de la filiación natural de los actores; que los demandados eran los que en el curso del pleito, fuera del trámite de contestación a la demanda, donde en todo caso únicamente cabría aducir la excepción, habían venido a poner en duda la *calidad* que se atribuían; y por consecuencia, a los demandados y no a sus contendores tocaba la obligación de probar ese punto traído espontáneamente a la controversia con arreglo a la precitada ley, que dice: 'e otrosí aquel que faze este niego

razona por sí ley é derecho; é por ende ha menester que lo mues-
tre é que lo pruebe:' ''

Y el Tribunal Supremo casó y anuló la sentencia de la
Audiencia Territorial de la Habana, por el fundamento que
sigue:

"Considerando que apoyada la absolución, como única e indiso-
luble premisa, en que si bien los actores habían probado que son hi-
jos de D. Esteban Santa Cruz de Oviedo, les faltaba la justificación
de que al tiempo de la concepción o al del nacimiento hubieran po-
dido sus padres casarse *justamente y sin dispensación,* se infringen
por la sentencia la disposición y doctrinas invocadas en los motivos
6o, 7o, 13 y 14, porque declarado el primer concepto expresado, re-
ferente a la filiación, se presume por derecho que ellos pertenecen
a la clase más general de ilegítimos, o que sus progenitores no eran
inhábiles para el matrimonio, mientras no se comprobara lo con-
trario.''

En el caso de *Silva* v. *Salamanca et al.,* 14 D.P.R. 543
se citó con aprobación el de *Lange, supra,* y en el curso de
la opinión se dijo:

". . . . Jaime Salamanca declaró que vivía en Guayama, que co-
nocía a Don Miguel Alemany Ripoll, soltero, su hermano de madre,
fallecida en 6 de octubre de 1907, que no existía grado alguno de
parentesco entre su hermano e Isabel Silva. De modo que surge la
presunción de que el finado era y siguió siendo soltero hasta la fe-
cha de su muerte, y que no había otros impedimentos para contraer
matrimonio.''

La jurisprudencia establecida en el mismo aparece re-
sumida así:

"Habiéndose alegado en la demanda que ni en la fecha de la
concepción de los hijos naturales ni en la del fallecimiento del su-
puesto padre natural, existió impedimento alguno entre el padre y
la madre para contraer matrimonio por ser ambos solteros y no es-
tar ligados por ningún grado de parentesco, y no habiendo sido im-
pugnada expresamente en la contestación esa alegación, ni presentado
prueba en contrario, no es necesario probar la aptitud legal de la
demandante para contraer matrimonio, porque existe a favor de los
hijos la presunción legal *juris tantum* de pertenecer a la clase de

hijos naturales, y probada la paternidad, se presume salvo prueba en contrario, que los padres en el momento de la concepción o del parto podían casarse justamente y sin dispensa.''

Más tarde en el caso de *Pérez Villamil et al.* v. *Romano et al.*, 19 D.P.R. 875, 884, esta corte se expresó del modo que sigue:

''Los apelantes también alegan que los demandantes dejaron de probar durante el juicio, que en la época de su nacimiento sus padres eran ambos solteros y podían contraer matrimonio. Hemos resuelto en varios casos que debe presumirse que una persona es soltera hasta tanto se demuestre lo contrario, pero debe recordarse que ésta no es una acción sobre filiación en la cual es necesario el requisito referente al estado de soltería, sino un pleito sobre nulidad de un testamento y para que se declaren herederos a los demandantes. Ellos se fundan en su estado legal reconocido anteriormente y la obligación de probar que sus padres no tenían derecho a casarse incumbe a la otra parte.''

En el caso resuelto últimamente de los citados por la Corte de Distrito, o sea en el de *Delannoy* v. *Blondet,* 22 D.P.R. 235, 249, esta corte dijo:

''La alegación jurada en la demanda de que María Teresa Delannoy y Carlos H. Blondet, eran solteros y sin impedimento alguno entre ellos para contraer matrimonio en la fecha de la concepción y del nacimiento del demandante, no fué negada específicamente ni impugnada en la contestación y por tanto debe tenerse por cierta para los efectos de la acción.

''Pero es que sobre esa alegación de la demanda se suministró prueba por la misma parte demandante, consistente en la declaración de María Teresa Delannoy, la cual afirmó que entre ella y Blondet existieron relaciones amorosas por espacio de 8 a 10 meses, siendo ambos solteros, y siendo ella soltera también cuando nació el fruto de esas relaciones.

''Aunque no hubiera habido prueba alguna acerca de la capacidad de María Teresa Delannoy y Carlos Blondet para contraer matrimonio en la fecha de la concepción y del nacimiento del demandante, sería de sostenerse esa capacidad por falta de prueba en contrario con arreglo a la jurisprudencia ya establecida por esta corte en los casos de *Lange* v. *Avilés,* 2 S.P.R. 611, y de *Silva* v. *Salamanca y otros,* 14 D.P.R. 545.''

En su alegato la parte apelante examina los anteriores casos y sostiene que son distintos del presente y por tanto inaplicables. Y sostiene además que aun cuando así no fuera, la jurisprudencia en ellos establecida fué abandonada por este mismo tribunal, citando los casos de *Montalvo* v. *Montalvo,* 25 D.P.R. 858 y *El Pueblo* v. *Ramos,* 29 D.P.R. 21.

Del caso de *Montalvo, supra,* se deduce que esta corte estimó que una demanda sobre reconocimiento que no aducía la libertad de los padres para contraer matrimonio no alegaba hechos suficientes, pero de ello no puede concluirse que esta corte abandonara la doctrina sobre presunción sostenida en los casos anteriores. Al contrario. En el curso de la opinión se dice:

"El impedimento entre tutor y pupila no es legalmente dispensable. Solamente el padre del pupilo podía relevar a las partes de esta incapacidad, autorizando el matrimonio 'en testamento o escritura pública.' Sin embargo, Manresa sostiene que no solamente en el caso de esta formal autorización se encuentra un hijo, que haya sido concebido fuera del matrimonio, dentro de la definición que da el código de un hijo natural pero aun de otro modo, dada la posibilidad de tal 'dispensa,' debe ésta presumirse y los términos en que se halla redactado el código deben interpretarse de modo que se incluyan todos aquellos casos en los que pudiera haber desaparecido el impedimento legal. *Comentarios al Código Civil,* por Manresa, tomo I, página 535. De ser sana esta proposición las cuestiones levantadas bajo el sexto y séptimo errores quedan concluyentemente resueltas." *Montalvo* v. *Montalvo et al.,* 25 D.P.R. 858, 865.

El otro caso citado, *El Pueblo* v. *Ramos,* desautoriza en efecto la doctrina anteriormente establecida en el de *El Pueblo* v. *Gutiérrez,* 21 D.P.R. 70, pero no afecta a los citados por el juez sentenciador. El hecho de que se haya decidido que sea necesario en un caso criminal de seducción probar la condición de soltera de la ofendida por tratarse de uno de los elementos del delito, no destruye necesariamente la jurisprudencia establecida en los repetidos casos de *Lange, Silva, Pérez Villamil* y *Delannoy.*

Siendo esto así, habiéndose alegado en la demanda la libertad de los padres y habiéndose probado las relaciones de concubinato entre los mismos y el nacimiento de la demandante como consecuencia de dichas relaciones y el claro reconocimiento de la paternidad por parte del padre y de su familia, la libertad en que se encontraban los padres para contraer matrimonio al tiempo de la concepción o del nacimiento de la demandante debe presumirse que existía, a menos que se demuestre por el demandado o surja de la prueba misma del demandante lo contrario.

A este último respecto sostiene en su alegato la parte apelante lo que sigue:

"Si examinamos la prueba documental presentada por la demandante encontraremos la partida de matrimonio de Juana Asia Lebrón con Inocencio Díaz y de su examen resulta que la demandada casó el día 6 de enero de 1913 con Inocencio Díaz que era de estado viudo.

"¿Cuándo enviudó? La demandante nada nos ha dicho sobre ese particular.

"De la declaración de los testigos hijos legítimos de Inocencio Díaz, llegamos al conocimiento de que éste había contraído matrimonio con la madre de dichos testigos y que divorció de ella.

"¿Cuándo divorció? La demandante nada nos dice.

"¿Estaría divorciado en la época de la concepción de la demandante y sería soltero Inocencio Díaz o estaría casado en segundas nupcias y por tanto, impedido de contraer matrimonio? Estas preguntas surgen de la prueba presentada por la demandante, y a ella incumbía esclarecer este hecho y nada hizo ni nada intentó sobre este extremo."

Pero la parte apelada contesta, con razón, a nuestro juicio, en el suyo, así:

"La apelante quiere aprovecharse de la certificación presentada por la demandante-apelada del matrimonio de Inocencio Díaz con la demandada Juana Asia Lebrón, de fecha seis de enero de 1913, en cuanto a que en dicha certificación se dice que Inocencio Díaz era de estado viudo. Y se pregunta: ¿cuándo enviudó?

"En primer lugar hemos de sostener que la certificación de ma-

trimonio referida solamente hace fe, según jurisprudencia constante de este Hon. Tribunal, del hecho que motivó su otorgamiento y de la fecha de éste, pero no de la veracidad de las manifestaciones que en ella se insertan respecto a la filiación o estado del casado.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"Y en segundo lugar, diremos que, de acuerdo con la doctrina establecida por este Hon. Tribunal, de que los hijos ilegítimos se presumen de la clase de naturales mientras no se pruebe lo contrario, hay que presumir que Inocencio Díaz enviudó, en caso de que esa circunstancia fuera cierta, que nada se probó en el juicio sobre ese extremo, antes de nacer la menor Carmen Vicenta Rivera, o que se casó o enviudó después de haber nacido la citada menor.

"La apelante trata de usar en su provecho la declaración de los hijos legítimos de Inocencio Díaz sobre el casamiento y divorcio de éste con la madre de dichos testigos, y pregunta: ¿cuándo divorció?

"Y aunque el apelante sostiene que la demandante nada dice sobre el particular, nosotros sostenemos que esos mismos testigos contestan dicha pregunta categóricamente.

"El testigo Francisco Díaz, el mayor de los hijos legítimos de Inocencio Díaz, dice tener 32 años de edad y declara que su papá se divorció de su madre 'cuando él estaba chiquito.'

"Si tenemos en cuenta que la menor Carmen Vicenta Rivera nació el día 5 de mayo de 1912, y que a juzgar por su declaración, Francisco Díaz nació en el año 1893, hay que admitir que cuando Carmen Vicenta Rivera nació, ya Francisco Díaz tenía 19 años; y hay que razonablemente pensar que, cuando Francisco Díaz declara que él 'estaba chiquito' cuando sus padres se divorciaron, tiene que referirse a una época muy anterior a cuando tenía 19 años de edad, o sea, la fecha en que nació la menor Carmen Vicenta Rivera. Por lo que hay que convenir que ese divorcio tuvo lugar mucho antes de haber nacido la demandante, y que si Inocencio Díaz se divorció antes de ésta nacer, volvió a surgir la presunción de soltería mientras no se demostrara lo contrario, según la jurisprudencia de este Hon. Tribunal en el caso de *Silva* v. *Salamanca*, 14 D.P.R. 546.

"La apelante también pregunta si Inocencio Díaz estaría casado en segundas nupcias cuando nació la demandante. Eso precisamente era lo que la apelante tenía que probar y no probó.

"Pero hay algo más. Cuando la corte inferior resolvió este caso declarando sin lugar la demanda por no haberse probado que Inocencio Díaz fuera soltero en el tiempo de la concepción de la me-

nor Carmen Vicenta Rivera, esta parte, conociendo la jurisprudencia de este Hon. Tribunal en el sentido de que eso no era necesario probarlo, presentó moción de reconsideración sobre el aspecto jurídico, y para nada pensó en examinar el récord taquigráfico para ver si había o no probado los extremos de referencia. Pero una vez listo el caso para apelación, examinando con calma dicho récord, encontramos en la declaración de Monserrate Rivera, madre de la niña demandante, plenamente probado que Inocencio Díaz era soltero en el momento de la concepción de dicha niña. Veámoslo. 'Y como era un hombre libre, *que no era casado,* por eso LO QUISE. No sé que él tuviera otra mujer.'

"¿Cuándo era Inocencio Díaz un hombre libre, *que no era casado?* Cuando Monserrate Rivera *lo quiso.* ¿Y qué quiere expresar Monserrate Rivera al decir *lo quise?* Pues cuando se fué con él.''

Bajo cualquier aspecto que el caso se considere procede, pues, la confirmación de la sentencia recurrida. No sólo debe presumirse la libertad de los padres de la demandante para contraer matrimonio al tiempo de su concepción o nacimiento, probados como fueron la paternidad y el reconocimiento, si que hay prueba en los autos de dicha libertad.

*Confirmada la sentencia.*